**Jennifer Lynn ROMEA,**
**Plaintiff–Appellee,**

v.

**HEIBERGER & ASSOCIATES,**
**Defendant–Appellant.**

**Docket No. 98–7259**

United States Court of Appeals,
Second Circuit.

Argued Nov. 17, 1998.

Decided Dec. 9, 1998.

Robert E. Sokolski, Robert E. Sokolski, Esq., P.C., New York, N.Y. (Colleen F. McGuire, McGuire & Zekaria, P.C., New York, N.Y., on the brief), for Plaintiff–Appellee Jennifer Lynn Romea.

Evan H. Krinick, Rivkin, Radler & Kremer, Uniondale, N.Y., for Defendant–Appellant Heiberger & Associates.

James B. Fishman, Fishman & Neil, New York, N.Y., and Joanne S. Faulkner, New Haven, Conn., for Amicus Curiae National Association of Consumer Advocates.

Stephen L. Gordon and Thomas Richichi, of counsel, Beveridge & Diamond, P.C., New

York, N.Y., for Amicus Curiae National Multi Housing Council, National Apartment Association, Community · Housing Improvement Program, Inc., National Association of Home Builders, National Leased Housing Association, and American Seniors Housing Association.

Mark E. Housman and Stuart M. Riback, of counsel, Siller Wilk LLP, New York, N.Y., for Amicus Curiae Borah, Goldstein, Altschuler & Schwartz, P.C.

Scott A. Rosenberg, Director of Litigation, Civil Appeals and Law Reform Unit, Hwan–Hui Helen Lee, of counsel, Civil Appeals and Law Reform Unit, and Helaine Barnett, Attorney–in–Charge, Civil Division, The Legal Aid Society, New York, N.Y., for Amicus Curiae City–Wide Task Force on Housing Court.

Before: CALABRESI, SACK, and SOTOMAYOR, Circuit Judges.

CALABRESI, Circuit Judge:

This case raises the issue of whether the requirements of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692–1692o, apply to an attorney's execution and delivery of the three-day rent demand notice that is required by New York law as a condition precedent to a summary eviction proceeding. Finding that the FDCPA does apply, we affirm the district court's denial of the defendant's motion to dismiss the plaintiff's complaint.

## I. BACKGROUND

On December 26, 1996, Defendant–Appellant Heiberger & Associates ("Heiberger")

sent a letter to Plaintiff–Appellee Jennifer Lynn Romea demanding back rent allegedly owed by Romea. The text of the letter read:

> PLEASE TAKE NOTICE that you are hereby required to pay to 442 3RD AVE. REALTY LLC landlord of [442 Third Avenue], the · sum of $2,800.00 for rent of the premises[.]
> . . .
>
> You are required to pay within three days from the day of service of this notice, or to give up possession of the premises to the landlord. If you fail to pay or to give up the premises, the landlord will commence summary proceedings against you to recover possession of the premises.

The letter appears to indicate that the $2,800 stemmed from Romea's failure to pay her $700 rent for the months of September, October, November, and December of 1996.

On June 25, 1997, Romea filed a class action complaint in the Southern District of New York alleging that the letter violated provisions of the FDCPA. Specifically, the complaint asserted that the letter (1) "violated 15 U.S.C. § 1692(g) by failing to adequately advise the Plaintiff of her rights, because the thirty (30) day validation notice required by 15 U.S.C. § 1692(g) was not placed anywhere in the demand for payment of the alleged debt";[1] (2) "violates 15 U.S.C. § 1692(g) because it contradicts the requirement that the Plaintiff be advised of and be given a thirty (30) day period in which to dispute the bill"; (3) "failed to disclose clearly that the Defendant was attempting to collect a debt, and that any information obtained would be used for that purpose, as required by 15 U.S.C. § 1692(e)(11)";[2] and

---

1. Section 1692g(a) provides in relevant part that:
 Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
 . . . .
 (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; [and]
 (4) a statement that if the consumer notifies the debt collector in writing within the thir-

ty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector
 . . . .
 15 U.S.C. § 1692g(a) (1994).

2. Section 1692e provides in relevant part that "the following conduct is a violation of this section":
 (11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the

(4) "contained threats to take actions that could not legally be taken, or that were not intended to be taken, in violation of 15 U.S.C. § 1692(e)(5)." [3]

Heiberger moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. It argued that the FDCPA does not apply to the letter because rent due is not a "debt" and its letter was not a debt collection "communication" as the FDCPA defines those terms. The district court denied the motion, holding that both the plain language and the legislative history of the FDCPA dictate the conclusion that the requirements of the FDCPA apply to Heiberger's letter. *See Romea v. Heiberger & Assocs.*, 988 F.Supp. 712 (S.D.N.Y.1997).

Heiberger thereupon moved for certification of an interlocutory appeal, which the district court granted. In so doing, it noted (1) that "there is a conflict among the circuits as to whether an obligation must involve the deferral of payment in order to constitute a 'debt' within the meaning of the [FDCPA]"; and (2) that "[t]he effect of this Court's ruling is to require a sea change in the practice as well as to open the door to a flood of federal court suits against lawyers under the FDCPA." *Romea v. Heiberger & Assocs.*, 988 F.Supp. 715, 716–17 (S.D.N.Y.1998). We accepted the appeal on March 10, 1998.

## II. DISCUSSION

### A. Standard of Review

We review the district court's decision *de novo*, both because it involves a motion to dismiss under Rule 12(b)(6), *see Scotto v. Almenas*, 143 F.3d 105, 109 (2d Cir.1998), and because it requires us to answer an issue of statutory interpretation, *see Perry v. Dowling*, 95 F.3d 231, 235 (2d Cir.1996). In evaluating a motion to dismiss for failure to state a claim, we are "required to accept as true all factual allegations in the complaint and to consider documents attached to or incorporated by reference in the complaint." *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir.1998) (citations omitted).

### B. Back Rent Is a Debt

■ Heiberger contends that the FDCPA does not apply to its letter to Romea because back rent does not fall under the FDCPA's definition of debt. The FDCPA defines debt as:

any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5) (1994).

Heiberger invokes two bases for its argument that back rent is not debt. First, it asserts that rent is not a debt because leases customarily require a tenant to prepay rent for a specified period, generally on a monthly basis, for the use of the premises for that period. Relying on the logic of dicta in a Third Circuit opinion, *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1168 (3d Cir. 1987),[4] Heiberger maintains that rent is not

---

consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

15 U.S.C. § 1692e (1994). The FDCPA defines "communication" very broadly as "the conveying of information regarding a debt directly or indirectly to any person through any medium." *Id.* § 1692(a)(2).

**3.** Section 1692e(5) provides that "[t]he threat to take any action that cannot legally be taken or

that is not intended to be taken" violates the FDCPA.

**4.** *Zimmerman* involved a cable signal theft—a tort that the court held did not constitute a "transaction" under the FDCPA because nothing in the Act equated tort liability with consumer debt. Only in further dicta did the Third Circuit opine that the type of transaction the FDCPA addresses is the same type of transaction as "in all other subchapters of the Consumer Credit Protection Act, i.e., one involving the offer or extension of credit to a consumer." *Id.* at 1168. At least four other circuits have disavowed *Zimmerman*'s dicta. *See Duffy v. Landberg*, 133 F.3d 1120, 1123–24 (8th Cir.), *cert. denied*, —— U.S. ——, 119 S.Ct. 62, 142 L.Ed.2d 49 (1998);

an extension of credit and that hence the obligation to pay it does not constitute a debt. Second, Heiberger claims that back rent is not a debt under the FDCPA because by definition a tenant who owes back rent has breached her lease and thereby terminated it. In the absence of a lease, the argument continues, no *transaction* between the landlord and tenant exists. Because the landlord is not consenting to the tenant's occupancy under such conditions and is prevented by New York Real Property and Proceedings Law § 711 from immediately evicting the tenant, the result is what Heiberger characterizes as "a nonconsensual relationship no different than the unauthorized use of cable television services or the nonpayment of taxes." And, as Heiberger notes, courts have held that such unauthorized uses are not debt. *Cf. Staub v. Harris*, 626 F.2d 275 (3d Cir.1980) (nonpayment of taxes); *Coretti v. Lefkowitz*, 965 F.Supp. 3 (D.Conn. 1997) (unauthorized use of cable television).

Heiberger's first ground misconstrues the issue, which is not whether all rent is an extension of credit, but whether back rent is a debt. Under the FDCPA, "debt" is an "obligation . . . to pay money arising out of a transaction" that involves "personal, family, or household purposes." 15 U.S.C. § 1692a(5). Back rent by its nature is an obligation that arises only from the tenant's failure to pay the amounts due under the contractual lease transaction. In this respect, back rent is much like the obligation arising out of a dishonored check where a service has been rendered or goods sold on the premise of immediate payment. The obligation to pay the bounced check, like the duty to pay back rent, does not derive from an extension of credit but rather because the

payor breached its payment obligations in the contract between the parties. Virtually all circuits that have addressed the issue of dishonored checks have held such checks to fall under the plain language of the FDCPA's definition of "debt."[5] For the same reasons that those courts deemed dishonored checks to be debts under the FDCPA, we conclude that back rent is a debt.

Heiberger must therefore rely on its second ground: that no transaction exists for tenants who owe back rent. But Heiberger asserts no basis for its claim that the existence of a transaction on which the debt must be grounded means an *extant* contractual arrangement. The FDCPA includes no such requirement.

Moreover, even if a current transaction were necessary, such a transaction is, in fact, present in the case of a landlord who sends a warning letter to a tenant. This is so because, in New York, the tenant's failure to make a rental payment does not automatically end the lease agreement. Instead, under New York law, the landlord-tenant relationship terminates and the lease is canceled only after a housing court finds the tenant in default of its obligations under the lease. *See* N.Y. Real Prop. Acts. Law § 749(3) (McKinney 1979). The lease expressly does not end either at the time the tenant defaults on her obligation to pay rent or when the landlord sends the tenant a warning letter. Thus, Heiberger's reference to "the unauthorized use of cable television services or the nonpayment of taxes" is inapposite; in those cases, no contractual relationship exists or indeed ever existed.

*Brown v. Budget Rent–A–Car*, 119 F.3d 922, 924 n. 1 (11th Cir.1997); *Charles v. Lundgren & Assocs., P.C.*, 119 F.3d 739, 741–42 (9th Cir.), cert. denied, — U.S. —, 118 S.Ct. 627, 139 L.Ed.2d 607 (1997); *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322 (7th Cir.1997).

5. *See Snow v. Jesse L. Riddle, P.C.*, 143 F.3d 1350, 1353 (10th Cir.1998) (holding that under a "plain meaning" interpretation of the FDCPA, " 'debt' is created where one obtain[s] goods and gives a dishonored check in return therefor"); *Duffy*, 133 F.3d at 1123–24 (holding that a dishonored check constitutes debt because it evi-

dences the check writer's failure to fulfill an obligation arising out of a "consensual transaction for goods or services"); *Charles*, 119 F.3d at 741–42 (holding that "a dishonored check is a 'debt' within the meaning of the FDCPA"); *Bass*, 111 F.3d at 1322 (finding that the plain meaning and legislative history of the FDCPA do not limit the meaning of "debt" to an offer or extension of credit but instead extend to any obligation arising out of a consensual consumer transaction); *see also Emanuel v. American Credit Exch.*, 870 F.2d 805 (2d Cir.1989) (assuming, without directly deciding, that past rent is a debt under the FDCPA).

Heiberger raises other similar (and equally unavailing) arguments as to why back rent, at least under New York law, is not debt. It contends that because a tenant can avoid eviction by paying back rent in response to a notice of warning from her landlord, payment of back rent in such circumstances "is not payment of a debt, but payment to secure the right to continued occupancy in the future." But there is no reason why paying back rent must be either "payment of a debt" or a means by which to avoid termination of the lease. It is manifestly both.

We therefore hold that, under the FDCPA, back rent is debt.

### C. § 711 Notices Involve Debt Collection

■ Heiberger argues that because its three-day notice was sent in connection with a possessory *in rem* action under Article 7 of the New York Real Property Actions and Proceedings Law, it is not a "communication" to collect a debt and therefore does not fall under the provisions of the FDCPA. Article 7 establishes a "summary proceeding to recover possession of real property." A landlord may bring an Article 7 proceeding to take possession of an apartment on the basis of the tenant's failure to pay rent only if "a demand of the rent has been made, or at least three days' notice in writing requiring, in the alternative, the payment of the rent, or the possession of the premises, has been served upon him." N.Y. Real Prop. Acts. Law § 711(2) (McKinney 1979).

■ Should the court in such a proceeding find in favor of the landlord, the court will then issue a warrant entitling the landlord to take possession of the apartment. *See id.* § 749(1). It is this warrant that cancels the lease and terminates the landlord-tenant relationship. *See id.* § 749(3); *Harris v. Yuan,* 157 Misc.2d 359, 360, 597 N.Y.S.2d 262, 263 (N.Y.City Civ.Ct.1993). The landlord may also recover unpaid rent owed by the tenant in an Article 7 proceeding. But it can only do this as a matter ancillary to the court's jurisdiction to hear a claim to recover possession. *See Tivoli Associates. v. Wing,* 122 Misc.2d 901, 902–03, 471 N.Y.S.2d 1018, 1019–20 (N.Y.City Civ.Ct. 1984).

Heiberger asserts that the purpose of the Article 7 process is not debt collection, but rather "a means of quickly adjudicating disputes over rights of possession of real property." Heiberger maintains that the matter of the rent owed by the tenant is "incidental" to the summary proceeding's primary purpose, that of regaining possession of the premises. *See Byrne v. Padden,* 248 N.Y. 243, 248, 162 N.E. 20, 21 (1928); *DiBello v. Penflex, Inc.,* 165 Misc.2d 994, 995, 630 N.Y.S.2d 848, 848 (N.Y.Co.Ct.1995). Moreover, a tenant can avoid the eviction proceeding by paying the owed rent. Although Heiberger is correct that the notice required by § 711 is a statutory condition precedent to commencing a summary eviction proceeding that is possessory in nature, this does not mean that the notice is mutually exclusive with debt collection.

The facts surrounding an Article 7 summary proceeding prove nothing about whether the notice that Romea received from Heiberger was or was not a "communication" sent "in connection with the collection of any debt," 15 U.S.C. § 1692e (1994). Whatever else it was, the § 711 letter that Heiberger sent to Romea was undeniably a "communication" as defined by the FDCPA in that it conveyed "information regarding a debt" to another person, *id.* § 1692a(2). And Heiberger makes no attempt to deny that its aim in sending the letter was at least in part to induce Romea to pay the back rent she allegedly owed. As a result, the fact that the letter also served as a prerequisite to commencement of the Article 7 process is wholly irrelevant to the requirements and applicability of the FDCPA.

We therefore hold that the § 711 notice that Heiberger sent to Romea was a "communication" under 15 U.S.C. § 1692g(a) and, as such, must comply with the FDCPA's requirements.

### D. Lawyers Sending § 711 Notices Are Debt Collectors

■ Heiberger also argues that the FDCPA is inapplicable to this case because the FDCPA exempts from the definition of

debt collector[6] "any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt," 15 U.S.C. § 1692a(6)(D). In contrast to its characterization of the § 711 notice elsewhere in its brief as a "prerequisite" to the Article 7 proceeding, Heiberger here claims that because § 711 requires that the notice be served on the tenant, the § 711 notice is "legal process." For this reason, Heiberger argues, "service of statutorily required notices such as notice required by RPAPL § 711 are not governed by the FDCPA."

■ Under New York law, however, a § 711 notice is a prerequisite to, rather than a part of, an Article 7 proceeding. "The three-day notice is not a pleading; rather, it is a notice to the tenant of what must be done to forestall a summary proceeding." *J.D. Realty Assocs. v. Jorrin*, 166 Misc.2d 175, 179, 632 N.Y.S.2d 441, 444 (N.Y.City Civ.Ct.1995), *aff'd sub nom. J.D. Realty Assocs. v. Scoullar*, 169 Misc.2d 292, 293, 650 N.Y.S.2d 67, 68 (N.Y.Sup.App.Term 1996) (referring to a § 711 notice as "a predicate for a summary eviction proceeding"); *Jorrin*, 166 Misc.2d at 177–78, 632 N.Y.S.2d at 443 ("[T]he three-day notice ... is the statutory predicate for a summary non-payment proceeding."); *see also Paulemon v. Tobin*, 30 F.3d 307, 310 (2d Cir.1994) (holding that a § 711 letter "cannot fairly be considered litigation activity" that would fit within an exception for litigation that the defendants proposed should be read into the FDCPA) (and that was subsequently rejected by the Supreme Court in *Heintz v. Jenkins*, 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995)). Article 7 expressly provides that a summary proceeding is "commenced by petition and a notice of petition." N.Y. Real Prop. Acts. Law § 731(1) (McKinney 1979 & Supp.1998); *see also id.* (setting forth requirements for

the content of the notice of petition); *id.* § 741 (delineating the requisite contents of the petition). And Heiberger offers us no basis for interpreting the definition of "legal process" under 15 U.S.C. § 1692a(6)(D) to include notices that are a prerequisite to, rather than part of, a legal proceeding.

■ In any event, we agree with Romea that Congress intended to apply the exemption only to "process servers," and not to those who prepared the communication that was served on the consumer. The language of § 1692a(6)(D) extends the exemption to a person only "while serving or attempting to serve legal process." *See also* S.Rep. No. 95–382, at 3–4 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1697–98 ("The term debt collector is not intended to include ... process servers.").[7] By exempting from liability under the FDCPA those individuals whose involvement in a debt collection communication was limited to serving the communication on the consumer—in effect, to being messengers—Congress did not compromise the strength of the FDCPA's protections. To read Congress, instead, as having carved out a wholesale exemption for anyone who prepares a communication—no matter how violative of the safeguards that the FDCPA affords debtors—just because the communication is eventually served on the consumer as a prerequisite to beginning a court proceeding, would not only stretch the statutory language; it would also significantly impede the statute from remedying the "mischief" to which it was addressed.

Accordingly, we find that the § 1692a(6)(D) exception does not apply to the § 711 notice that Heiberger sent to Romea, both because the notice was not "legal process" and because Heiberger's involvement

---

6. Under the FDCPA, a "debt collector" is defined as

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6) (1994).

7. If Congress had wanted to exempt any document that was served on the consumer, rather than just the delivery of such a document, it presumably would have adopted language akin to that in § 1692e(11), which exempts "a formal pleading made in connection with a legal action" from certain, but not all, of the FDCPA's disclosure requirements.

extended beyond mere service of the notice on Romea.[8]

### E. Consequences

■ In enacting Article 7, the New York legislature thought it appropriate to prescribe certain procedural requirements for landlords seeking to terminate the landlord-tenant relationship. Later, Congress decided to protect consumers who owe money by adopting a different, and in part more stringent, set of requirements that would constitute minimum national standards for debt collection practices.[9] Heiberger forcefully argues that the combined effect of applying both the New York and federal protections was more than either Congress or the New York legislature intended.[10] Even if this were so, the possibility does not empower us to disregard the plain language of the FDCPA unless the result is absurd or directly contravenes the purpose of the statute. See Helvering v. Hammel, 311 U.S. 504, 510–11, 61 S.Ct. 368, 85 L.Ed. 303 (1941) (noting that courts may depart from a plain-language reading of a statute "where acceptance of that [literal] meaning would lead to absurd results or would thwart the obvious purpose of the statute"); Salute v. Stratford Greens Garden Apartments, 136 F.3d 293, 297 (2d Cir.1998) (citation omitted).[11]

Applying the FDCPA to § 711 notices would not lead to absurd consequences. For example, it is easy to imagine a situation in which a debt collector sends a § 711 notice that complies with New York's requirements but still contravenes the purposes of the FDCPA by using abusive or coercive techniques to convince the tenant to pay the back rent. Cf., e.g., State v. 820 Assocs., 116 Misc.2d 901, 903, 456 N.Y.S.2d 604, 606 (N.Y.Sup.1982) (noting, in a case involving alleged harassment of tenants by a landlord seeking to convert an apartment building into a cooperative, that "[a]t least one tenant was repeatedly sued for non-payment[,] which suits were either dismissed or withdrawn on proof submitted by the tenant that the rents had been paid"), aff'd, 93 A.D.2d 1008, 462 N.Y.S.2d 524 (1st Dep't 1983). At least in those circumstances, applying the FDCPA's requirements in addition to the requirements of the Article 7 process may be necessary to achieve the FDCPA's goal of protecting consumers from unacceptable debt collection practices.

In a final attempt to avoid application of the FDCPA to § 711 notices, Heiberger states that "[t]he purpose of the FDCPA is to protect the consumer from improper debt collection activities—none of which are alleged to have occurred here." But this argument fails on two fronts.

First, whether the § 711 notice sent in this case was abusive or not has no bearing on whether the FDCPA should apply to § 711

---

**8.** In addition, because we rule that the § 711 notice is not legal process, we also reject Heiberger's attempt to avail itself of the provision under § 1692e(11) exempting formal legal pleadings from the FDCPA's requirement that a debt communication disclose "that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose."

**9.** Congress defined the purpose of the FDCPA as

to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

15 U.S.C. § 1692(e) (1994).

**10.** At times, Heiberger portrays the FDCPA and Article 7 as actually conflicting. This of course is not true. An attorney representing a landlord who chooses to send a § 711 notice can readily conform the notice to the requirements of the FDCPA without violating any provisions of Article 7. If the statutes did conflict, moreover, it would be Article 7, and not the FDCPA, that would have to yield. See 15 U.S.C. § 1692n (1994) ("This subchapter does not annul, alter, or affect ... the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provisions of this subchapter, and then only to the extent of the inconsistency.").

**11.** Moreover, if the protections afforded tenants under New York's Article 7 process do result in "requirements substantially similar to those imposed by [the FDCPA]," then New York may petition the Federal Trade Commission to promulgate regulations that exempt § 711 notices from the FDCPA. See 15 U.S.C. § 1692o (1994). The record contains no indication that New York has made any such claim as to the sufficiency of the § 711 process to achieve the objectives of the FDCPA.

notices in general. At best, Heiberger has simply asserted that applying the FDCPA to its particular § 711 notice is unnecessary to effectuate the goals of the FDCPA. And this falls far short of showing that applying the FDCPA to its § 711 notice "thwart[s] the obvious purpose of the statute," *Helvering,* 311 U.S. at 511, 61 S.Ct. 368.

Second, Heiberger's statement misses the point. It is the provisions of the FDCPA that by and of themselves determine what debt collection activities are improper under federal law. If the statute applies to Heiberger's letter and the letter does not comply with the FDCPA's requirements, then by definition it constitutes an improper debt collection activity under federal law.

## III. CONCLUSION

We hold (1) that the back rent that Romea allegedly owed is "debt" for purposes of the FDCPA; (2) that the § 711 three-day notice Heiberger sent to Romea was a "communication" sent "in connection with the collection of [a] debt," 15 U.S.C. § 1692e (1994); (3) that the FDCPA's exception for a "person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt" does not exempt Heiberger from the FDCPA, *id.* § 1692a(6)(D); and (4) that applying the FDCPA to Heiberger's three-day notice does not lead to an absurd result that would allow us to disregard the statutory language. We therefore affirm the district court's decision denying Heiberger's motion to dismiss Romea's complaint.