

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-31-2005

# Piper v. Portnoff Law Assoc

Precedential or Non-Precedential: Precedential

Docket No. 03-4399

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Piper v. Portnoff Law Assoc" (2005). *2005 Decisions.* Paper 1524.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1524

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

IN THE UNITED STATES COURT
OF APPEALS
FOR THE THIRD CIRCUIT

—————

NO. 03-4399

—————

BRIDGET A. PIPER, on behalf of herself
and all others similarly situated

v.

PORTNOFF LAW ASSOCIATES, LTD.;
MICHELLE R. PORTNOFF, Esq.;
DAWN M. SCHMIDT, Esq.,
Appellants

—————

On Appeal From the United States
District Court
For the Eastern District of Pennsylvania
(D.C. Civil Action No. 03-cv-02046)
District Judge:  Hon. Marvin Katz

—————

Argued October 5, 2004

BEFORE:  SLOVITER, BECKER and
STAPLETON, Circuit Judges

(Opinion Filed: January 31, 2005)

James W. Christie (Argued)
William F. McDevitt
Christie, Pabarue, Mortensen & Young
1880 JFK Blvd. - 10th Floor
Philadelphia, PA 19103
 Attorneys for Appellants

David A. Searles (Argued)
Michael D. Donovan
Donovan Searles
1845 Walnut Street - Suite 1100
Philadelphia, PA 18103
 Attorneys for Appellee

OPINION OF THE COURT

STAPLETON, Circuit Judge:

This appeal presents the certified question of whether the requirements of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), apply to the defendants' efforts to collect municipal water obligations of the plaintiff, Bridget Piper. We hold that they do.

2

I.

Until 2002, the City of Bethlehem ("City") contractually retained the private law firm of Portnoff Law Associates, Ltd. ("PLA") to collect payment for overdue water and sewer obligations. The City notified PLA of delinquent water and sewer assessments, and PLA then contacted homeowners in attempts to collect on those claims.

On February 20, 2002, the City notified PLA of a delinquent water service obligation of Bridget and Michael Piper at 828 Kossuth Street, Bethlehem, Pennsylvania, in the amount of $252.71. PLA then sent Mr. and Mrs. Piper the following correspondence:

> a. On February 21, 2002, PLA mailed a letter on City stationery and addressed to Mr. and Mrs. Piper personally, advising them that they were delinquent in water fees owed to the City in the sum of $252.75. The letter stated: "you are urged to make your payment to [PLA]," and was signed "Very truly yours, City of Bethlehem." App. at R105a; R267a-268a.

> b. On April 4, 2002, PLA mailed a second letter – this time on PLA letterhead – directly to Mr. and Mrs. Piper. This letter advised them that they were "delinquent in the payment of [their] water fees," and that they owed the City $404.37, which included the delinquent water bill, interest, penalties and attorneys' fees. The letter stated "[u]nless payment of the above amount is

3

received by [PLA] within ten (10) days of the date of this letter, a lien will be filed against your property."[1] It further advised as follows: "You are hereby advised that City of Bethlehem will avail itself of all legal remedies until it receives payment in full. Legal recourse will result in substantial additional cost to you and may result in the Sheriff's sale of your property. . . . Payment must be made in full." App. at R108a (emphasis in original).

c. On May 9, 2002, PLA mailed a third letter to Mr. and Mrs. Piper. Enclosed with the letter was a copy of a municipal lien "for non-payment of water fees ... assessed against the [Pipers] and described properties..." The letter advised Mr. and Mrs. Piper that the sum of $567.07 was due to clear the lien (this sum included additional attorneys' fees and a filing fee), and warned that "unless your check in that amount is received by [PLA] within fifteen (15) days," PLA would initiate a Sheriff's Sale of the Pipers' home. The letter concluded by urging Mr. and Mrs. Piper to "pay the full amount above to this office within the time period specified." App. at R109a.

---

[1] Liens to secure delinquent water obligations are provided for by the Commonwealth of Pennsylvania's Municipal Claims and Tax Liens Act, 53 P.S. §7101, *et seq.* ("MCTLA").

4

d. PLA sent three more letters addressed personally to Mr. and Mrs. Piper, dated September 16, 2002, October 3, 2002 and November 8, 2002. Each letter demanded payment of a balance due. The October 3, 2002 letter stated "I wanted to afford you a final opportunity to pay the balance before further legal action occurs with additional charges assessed. This balance must be paid within ten days of the date of this letter..." The November 8 letter stated that PLA had been directed to file a writ of execution against the Pipers' home and that they would be given "one final opportunity to make arrangements for payment" during the ensuing thirty days. *See* App. at R201a; R204a; R213a.

PLA also made a number of telephone calls to the Piper residence in an effort to secure payment of the delinquent water service fees.

PLA has never disputed that the letters it sent to Mr. and Mrs. Piper failed to include the debt verification language required by § 1692(g) of the FDCPA.[2] App. at R33a. PLA has

---

[2] 15 U.S.C. § 1692(g) requires that

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial

5

communication or the consumer has paid the debt, send the consumer a written notice containing--

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the

likewise never disputed that its letters did not state that they were sent by a debt collector, that the debt collector was attempting to collect a debt, and that any information obtained by PLA would be used for that purpose, as required by § 1692(e)(11) of the FDCPA.[3] *Id.*

In May of 2002, PLA secured the issuance of a Writ of Scira Facias to Mr. and Mrs. Piper by the Court of Common Pleas for Northampton County, Pennsylvania. The Writ advised

---

> original creditor, if different from the current creditor.

[3]15 U.S.C. § 1692 (e)(11) provides that it is a violation of the act when a party fails

> to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

them of "a municipal claim for the sum of $576.03 for water fees due the City of Bethlehem" and warned that if an Affidavit of Defense were not filed in 15 days, "judgment may be entered against you for the whole claim." App. at R189a; R195a; R196a. In July and August 2002, Mr. and Mrs. Piper made two payments to PLA, totaling $553.60. PLA applied the payments to its own fees and to costs. On October 24, 2002, Mr. and Mrs. Piper received a notice from the Court that a judgment had been entered against them in the amount of $465.77. The caption on the notice included the words "Civil Action – In Rem" without further explanation. App. at R211a. PLA filed a "Praecipe For Writ of Execution (Money Judgment)" on February 7, 2003. The Pipers' home was scheduled for a Sheriff's Sale on May 9, 2003.

On March 31, 2003, Bridget Piper filed this suit against PLA and two of its attorneys, Michelle R. Portnoff, Esq. and Dawn M. Schmidt, Esq., in the United States District Court for the Eastern District of Pennsylvania. The Complaint alleged that PLA's attempts to collect payment of water and sewer bills owed to the City violated the FDCPA and the Pennsylvania Fair Credit Extension Uniformity Act, 73 P.S. § 2270.1 *et seq.* ("FCEUA").[4] The Complaint alleged that PLA violated these statutes by failing to include statutory disclosures required for communications sent to consumers, by falsely representing or implying that the letters were from an attorney, and by collecting and attempting to collect fees that were not permitted by the agreement creating the debt nor permitted by law. The Complaint sought class certification, declaratory and injunctive

---

[4]The FCEUA defines "unfair methods of competition and unfair or deceptive practices with regard to the collection of debts." 73 P.S. § 2270.4. Engaging in one of those practices constitutes a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq.* ("CPL").

8

relief, and damages under the relevant statutes.

The District Court issued a preliminary injunction foreclosing PLA from taking any action to facilitate the Sheriff's Sale of Mrs. Piper's home, *see Piper v. Portnoff Law Assoc's., Ltd.*, 262 F. Supp. 2d 520, 527-30 (E.D. Pa. 2003), and certified a class under both the FDCPA and the FCEUA/CPL. *Piper v. Portnoff Law Assoc's., Ltd.*, 215 F.R.D. 495 (E.D. Pa. 2003); *Piper v. Portnoff Law Assoc's., Ltd.*, 216 F.R.D. 325 (E.D. Pa. 2003).

Mrs. Piper moved for partial summary judgment on the issue of PLA's liability as a debt collector under the FDCPA. The Plaintiffs argued that the delinquent water and sewer bills qualified as debt under the FDCPA, and, therefore, PLA's attempts to collect those debts are governed by the requirements of the FDCPA. PLA argued that its decision to execute on the municipal lien rather than proceed *in personam* against the individuals removed its collection efforts from the purview of the FDCPA. The District Court granted Mrs. Piper's motion by order dated July 31, 2003,[5] but certified for interlocutory appeal the issue of "whether the FDCPA applies to defendants' practice." App. at R41a. We granted petitions for permission to appeal.[6]

II.

---

[5]The District Court determined that no question of material fact existed because PLA never disputed that it failed to include the validation language and debt collector information required by the FDCPA in the letters which it sent to the Plaintiffs.

[6]By order entered January 7, 2004, the District Court granted final approval of the parties settlement as to damages. The settlement is conditioned on PLA being found to be a debt collector under the FDCPA.

The District Court had jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367. We have jurisdiction over this appeal pursuant to 28 U.S.C. 1292(b). Our review is plenary. *Saunders v. Easton*, 325 F.3d 432, 441 (3d Cir. 2003); *Lauderbaugh v. Hopewell Twp.*, 319 F.3d 568, 573 (3d Cir. 2003).

## III.

The FDCPA provides a remedy for consumers who have been subjected to abusive, deceptive or unfair debt collection practices by debt collectors. *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 400 (3d Cir. 2000) (citing *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1167 (3d Cir. 1987)). The "threshold requirement of the FDCPA is that the prohibited practices are used in an attempt to collect a 'debt.'" *Id.*; *see* 15 U.S.C. §§ 1692e-f. The FDCPA defines "debt" as "any obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). "The term 'consumer' means any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3).

A "debt collector" under the statute is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Attorneys who regularly engage in debt collection or debt collection litigation are covered by the FDCPA, and their litigation activities must comply with the requirements of that Act. *Heintz v. Jenkins,* 514 U.S. 291 (1995).

10

The provisions of the FDCPA that Piper relied upon in her motion for partial summary judgment require the inclusion of certain information in early communications "with a consumer in connection with the collection of any debt." 15 U.S.C. §§ 1692g and e.[7] Given PLA's concession that it did not provide the information required by these sections of the FDCPA, the issue for decision is whether PLA's communications to Piper were communications by a "debt collector" with a "consumer" in "connection with the collection of a [debt]."

We first address whether Piper owed a "debt" to the City within the meaning of the FDCPA. We held in *Pollice* that a homeowner's consumption of municipal water/sewer services gave rise to an "'obligation to pay money' . . . which arose out of a 'transaction' (requesting water and services), the subject of which was 'services . . . primarily for personal, family, or household purposes.'" *Pollice*, 225 F.3d at 401. We find that holding to be controlling here.[8]

---

[7]*See* n. 2 and 3, *supra*.

[8]PLA insists that *Pollice* is distinguishable because Piper and other homeowners in Bethlehem, unlike the Pittsburgh homeowners in *Pollice*, did not have to file an application for water/sewer services and thus did not engage in a "transaction." The only cited support for this proposition is the testimony of Bethlehem's customer service supervisor, who said that, when a sale occurs, the title company usually takes care of having the account transferred to the purchasing party. *Compare Bethlehem, PA. Ordinance art. §§ 911.02(a) and 911.06(a)* (providing for submission of an application by persons desiring water services and approval thereof by the City). In any event, we think it clear from *Pollice* that whenever a homeowner voluntarily elects to avail himself of municipal water/sewer services, in whatever manner, and thereby incurs an obligation

The next question for resolution is whether PLA's communications to Piper were "in connection with the collection of [that] debt," or, as we put it in *Pollice*, whether they were "used in an attempt to collect a 'debt'". *Id.* at 400. There can be little debate on this score. Every letter PLA sent to the Pipers demanded the personal payment of money of the full amount due from them to satisfy their water/sewer services obligation to Bethlehem and, indeed, it accepted the payment of money from the Pipers' personal checking account. Indeed, as the text of the letters evidences, the whole purpose of these communications was to secure the payment of money in satisfaction of this debt. As defendant Schmidt candidly testified:

> Q.  Let me pick up on that.  You are not looking

---

to pay for such services, there is the kind of *pro tanto* exchange contemplated by the FDCPA. *Pollice*, 225 F.3d at 401 (quoting from *Staub v. Harris*, 626 F.2d 1275 (3d Cir. 1980) ("[T]he FDCPA applies to all obligations to pay monthly bills which arise out of consensual consumer transactions.")). It is true, as PLA stresses, that a property owner in Pennsylvania may incur an obligation to pay a water service fee even though he has not connected his property to the municipal water system, *see, e.g.*, *Coudriet v. Benzinger*, 411 A.2d 846 (Pa. Commw. 1980), but that is not the situation before us. Nor does this fact render erroneous the *Pollice* Court's characterization of normal water/sewer fees in Pennsylvania as arising from a "consensual . . . transaction." It is apparent from the Pipers' account with the City that their service was metered in the normal fashion and that the amount of their obligation to pay was based on the amount of water they chose to use. The consensual nature of the transaction distinguishes the situation before us from tax assessments which *Pollice* held to not be debts within the meaning of the FDCPA.

12

for payments from the real estate but payments from these individuals, is that correct?

A. That is correct. It is my – the record owners of the real estate would pay their delinquent tax and water bills.

Q. If they tendered personal checks, are they accepted?

A. Yes.

Q. You apply to the claim?

A. That is correct.

Q. Your hope is to get the persons, the individuals to pay the money?

A. Right. Our hope is that they pay as soon as possible in fact.

Q. You are not looking to liquidate the real property, but the payment from the individuals?

A. That is correct.

R.280a-281a.

The communications to the Pollices in *Pollice* similarly demanded payment of the full amount of the sewer/water claim and asked for payment by check. Moreover, those communications, like those to the Pipers, suggested that if the recipient did not have sufficient funds available, payment could be made in full under an installment plan. *Pollice*, 225 F.3d at 396-97. We perceive no material distinction between the communications found to be communications "used in an attempt to collect a 'debt'" in *Pollice* and those sent to the Pipers here.

Given the conclusion that the PLA's letters were so used and PLA's acknowledgment that attempting to collect similar claims in a similar manner is its sole business, it necessarily follows that it is a "debt collector" under the FDCPA. It also follows from our conclusion that the Pipers' water obligation

13

was a "debt" that the Pipers were "consumers" under the FDCPA. We therefore hold that PLA's efforts to collect the Pipers' delinquent water service fee comes within the scope of the FDCPA.

We are unpersuaded by PLA's argument that its practices cannot be found to be covered by the FDCPA because all it ever tried to do was enforce a lien in the manner dictated by the MCTLA. PLA's letters and calls prior to filing suit, as we have demonstrated, come within the plain meaning of the text of the FDCPA. The same can be said about many of the papers that PLA sent to the Pipers in the course of litigation. This settles the matter. As PLA acknowledges, the Pipers' consumption of water created a personal debt that could be collected in an action in assumpsit. The fact that the MCTLA provided a lien to secure the Pipers' debt does not change its character as a debt or turn PLA's communications to the Pipers into something other than an effort to collect that debt.

We have already noted that, if a communication meets the Act's definition of an effort by a "debt collector" to collect a "debt" from a "consumer," it is not relevant that it came in the context of litigation. *Heintz v. Jenkins*, 514 U.S. 291 (1995). The same is true where the communication comes in the context of *in rem* litigation. While it is true, as PLA stresses, that the *Pollice* opinion does not expressly address the issue, the communications there came in the context of a situation where there was a lien securing the homeowners' sewer/water obligation and where both the obligation and the lien were assigned to a debt collector. We nevertheless held that the Pollices' obligation was a "debt."

More directly on point, we held in *Crossley v. Lieberman*, 868 F.2d 566 (3d Cir. 1998), that the defendant was a "debt collector" based on the volume of *in rem* mortgage foreclosure actions he had filed in the Court of Common Pleas. The letters found in *Crossley* to constitute efforts to collect a "debt" are not materially distinguishable from those sent by PLA.

14

Our sister courts have also held that the fact that challenged communications come in the context of enforcing a lien is irrelevant. In *Romea v. Heiberger & Associates*, 163 F.3d 111 (2d Cir. 1998), the defendant had sent a notice required by a summary proceeding established by New York law to recover possession of real property from a tenant who owed back rent. The defendant "argue[d] that because its three-day notice[9] was sent in connection with a possessory *in rem* action under [New York law], it [was] not a 'communication' to collect a debt" within the meaning of the FDCPA. *Romea*, 163 F.3d at 116. The Court of Appeals for the Second Circuit rejected this argument on the following grounds:

> The facts surrounding an Article 7 summary proceeding prove nothing about whether the notice that Romea received from Heiberger was or was not a "communication" sent "in connection with the collection of any debt," 15 U.S.C. § 1692e (1994). Whatever else it was, the § 711 letter that Heiberger sent to Romea was undeniably a "communication" as defined by the FDCPA in that it conveyed "information

---

[9]The notice provided in part:
> Please take notice that you are hereby required to pay to 442 3rd Ave. Realty LLC landlord of [442 Third Avenue], the sum of $2,800.00 for rent of the premises[.] . . .
>
> You are required to pay within three days from the day of service of this notice, or to give up possession of the premises to the landlord. If you fail to pay or to give up the premises, the landlord will commence summary proceedings against you to recover possession of the premises.

*Romea*, 163 F.3d at 113.

regarding a debt" to another person, id. § 1692(a)(2). And Heiberger makes no attempt to deny that its aim in sending the letter was at least in part to induce Romea to pay the back rent she allegedly owed. As a result, the fact that the letter also served as a prerequisite to commencement of the Article 7 process is wholly irrelevant to the requirements and applicability of the FDCPA.

We therefore hold that the § 711 notice that Heiberger sent to Romea was a "communication" under 15 U.S.C. § 1692g(a) and, as such, must comply with the FDCPA's requirements.

*Romea*, 163 F.3d at 116.[10]

The Eleventh Circuit Court of Appeals reached a similar conclusion in *In re Martinez*, 311 F.3d 1272 (11th Cir. 2002) (adopting District Court opinion reported at 271 B.R. 696 (S.D. Fla. 2001)), where it found the FDCPA applicable to the service of a mortgage foreclosure packet including a summons, complaint, and related items called for by Florida mortgage foreclosure law.

---

[10]The *Romea* Court noted that the defendant "at times . . . portray[ed] the FDCPA and Article 7 as actually conflicting." It concluded, as we do here in response to similar suggestions, that there is no relevant conflict between the FDCPA and state law. If there were, however, "it would be [state law] and not the FDCPA, that would have to yield." *See* 15 U.S.C. § 1692n (1994) ("This subchapter does not annul, alter, or affect . . . the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provisions of this subchapter, and then only to the extent of the inconsistency."). *Romea*, 163 F.3d at 118 n.10.

16

In addition to this case law, we believe the text of the FDCPA evidences a Congressional intent to extend the protection of the Act to consumer defendants in suits brought to enforce liens. In order to protect such consumers against having to litigate in an inconvenient forum involving additional expense, § 1692i of the Act provides that "in the case of an action to enforce an interest in real property securing the consumer's obligation," a debt collector must "bring such action only in a judicial district or similar legal entity in which such real property is located." *See Shapiro and Meinhold v. Zartman*, 823 P.2d 120, 123-25 (Colo. 1992) (attorneys primarily engaged in enforcement of security interests held to be "debt collectors" under the FDCPA who are required by § 1692i to bring foreclosure suits where the real property is located, even though Colorado law authorized other venues).

Contrary to PLA's suggestion, we conclude that §§ 1692a(6) and 1692f(6) of the Act do not indicate a contrary Congressional intent. Section 1692a(6) provides the definition of the term "debt collector." It starts with the general definition we have previously discussed and concludes with six categories of exceptions to the general rule. In between, it provides that "[f]or the purpose of section 1692f(6) of this title, such term . . . . includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." Section 1692f(6) provides:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .
>> (6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if –

(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;

(B) there is no present intention to take possession of the property; or

(C) the property is exempt by law from such dispossession or disablement.

15 U.S.C. § 1692f(6).

PLA suggests that § 1692a(6), by making all persons in the business of enforcing security interests debt collectors for the purposes of one subsection of the Act, reflects a Congressional intent that such debt collectors be immune from all of the other provisions of the Act even if they would otherwise come within the general definition of "debt collector." We disagree. The portion of § 1692a(6) upon which PLA relies is not among the six listed *exceptions* to the general definition. It is cast in terms of *inclusion*, and we believe it was intended to make clear that some persons who would be without the scope of the general definition are to be included where § 1692f(6) is concerned. Even though a person whose business does not primarily involve the collection of debts would not be a debt collector for purposes of the Act generally, if his principal business is the enforcement of security interests, he must comply with the provisions of the Act dealing with non-judicial repossession abuses. Section 1692a(6) thus recognizes that there are people who engage in the business of repossessing property, whose business does not primarily involve communicating with debtors in an effort to secure payment of debts. Just such a person was involved in *Jordan v. Kent Recovery Services*, 731 F. Supp. 652 (D. Del. 1990), where an

18

automobile repossession business was held to be subject to § 1692f(6) but not the remaining provisions of the FDCPA.

The determinative factor in answering the question certified by the District Court is whether the obligation of the Pipers fits the statutory definition of a "debt" and whether PLA's activities fit the statutory definition of a "debt collector." As we have explained, giving those definitions their ordinary meaning, we find them satisfied. We agree with the District Court that "[i]f a collector were able to avoid liability under the FDCPA simply by choosing to proceed *in rem* rather than *in personam*, it would undermine the purpose of the FDCPA." *Piper*, 274 F. Supp. 2d at 687; *see also Romea*, 163 F.3d at 118 (expressing the concern that to hold otherwise would create situations "in which a debt collector sends a notice that complies with [a state's] requirements but still contravenes the purposes of the FDCPA by using abusive or coercive techniques" to compel payment).[11]

IV.

The communications of the PLA to the Pipers were subject to the requirements of the FDCPA. Accordingly, the order of the District Court entered July 31, 2003, will be affirmed.

---

[11]Congress enacted the FDCPA despite the fact that some states already had procedural requirements for debt collectors (*e.g.*, Pennsylvania's MCTLA) in place, because it "decided to protect consumers who owe money by adopting a different, and in part more stringent, set of requirements that would constitute minimum national standards for debt collection practices." *Romea*, 163 F.3d at 118.

19