The People of the State of New York, Respondent, *v.* County Transportation Company, Inc., Appellant.

Argued November 30, 1951; decided January 17, 1952.

*Edward R. Brumley* and *James Day O'Neill* for appellant. I. The conditional sale contract herein is not within the provisions of section 62 of the Public Service Law. (*People* v. *New York Central & H. R. R. R. Co.*, 199 N. Y. 539; *Public Service Comm.* v. *New York & Richmond Gas Co.*, 244 App. Div. 398; *Federal Deposit Ins. Corp.* v. *Apfelbaum*, 268 App. Div. 455; *Matter of Staten Is. Edison Corp.* v. *Public Service Comm.*, 263 N. Y. 209; *Lehigh Valley R. R. Co. Conditional Sale Contract*, 233 I. C. C. 359.) II. Congress has occupied the field. (*Lehigh Valley R. R. Co. Conditional Sale Contract*, 233 I. C. C. 359;

*People* v. *New York Central R. R. Co.,* 233 N. Y. 679; *Matter of St. Louis Southwestern Ry. Co.,* 53 F. Supp. 914, 157 F. 2d 337, 330 U. S. 836; *Thompson* v. *McDonald,* 95 F. 2d 937, 305 U. S. 263; *Lowe* v. *City Council of Augusta,* 45 F. Supp. 143; *Missouri Pacific* v. *Porter,* 273 U. S. 341; *Wickard* v. *Filburn,* 317 U. S. 111; *United States* v. *Darby,* 312 U. S. 100; *Labor Board* v. *Jones & Laughlin,* 301 U. S. 1; *Hill* v. *Florida,* 325 U. S. 538; *Hines* v. *Davidowitz,* 312 U. S. 52; *Cloverleaf Co.* v. *Patterson,* 315 U. S. 148; *Board of Trade* v. *Illinois Commerce Comm.,* 156 F. 2d 33; *Grier* v. *Tri-State Tr. Co.,* 36 F. Supp. 26, 127 F. 2d 719.)   III. The Commerce Clause precludes the exercise by the State of the power claimed in this action. (*Willson* v. *Black Bird Creek Marsh Co.,* 2 Pet. [U. S.] 245; *Cooley* v. *Board of Wardens of Port of Philadelphia,* 12 How. [U. S.] 299; *Gibbons* v. *Ogden,* 9 Wheat. [U. S.] 1; *Southern Pacific Co.* v. *Arizona,* 325 U. S. 761; *Freeman* v. *Hewit,* 329 U. S. 249; *Morgan* v. *Virginia,* 328 U. S. 373; *Buck* v. *Kuykendall,* 267 U. S. 307; *Michigan Comm.* v. *Duke,* 266 U. S. 570; *Minnesota Rate Cases,* 230 U. S. 352.)

*Lawrence E. Walsh, Counsel to Public Service Commission* (*Samuel R. Madison* and *Richard C. Llope* of counsel), for respondent.   I. The obligation here under consideration is an evidence of indebtedness within the meaning of section 62 of the Public Service Law. (*Matter of Waldstein,* 160 Misc. 763; *People* v. *New York Central & H. R. R. R. Co.,* 138 App. Div. 601, 199 N. Y. 539; *City of New York* v. *New York City Ry. Co.,* 193 N. Y. 543; *U. S.* v. *Chicago North Shore R. Co.,* 288 U. S. 1.) II. Congress has not occupied the field and has not asserted jurisdiction over small interstate bus companies. (*Hayes Frgt. Lines, Inc.,* 15 M. C. C. 439.)   III. Congress has not asserted jurisdiction over the conditional sales contracts of any carrier. (*Lehigh Valley R. R. Co. Conditional Sale Contract,* 233 I. C. C. 359; *Louisiana Ry. & Nav. Co. Purchase Contract Application,* 67 I. C. C. 808; *Southern Pacific Co.* v. *Arizona,* 325 U. S. 761.) IV. In the absence of Congressional action, State regulation may be extended to cover the subject matter of this case. (*Cooley* v. *Board of Wardens of Port of Philadelphia,* 12 How. [U. S.] 299; *California* v. *Zook,* 336 U. S. 725; *Southern Pacific Co.* v. *Arizona,* 325 U. S. 761; *People* v. *New York Central &*

*H. R. R. R. Co.*, 138 App. Div. 601, 199 N. Y. 539.) V. Inter-state motor carriers have been held subject to State regulation. (*S. C. Hwy. Dept.* v. *Barnwell Bros.*, 303 U. S. 177; *Eichholz* v. *Comm.*, 306 U. S. 268; *Southern Pacific Co.* v. *Arizona*, 325 U. S. 761.) VI. Securities of interstate utility companies are subject to State regulation in the absence of Congressional regulation. (*Jersey Central Co.* v. *Power Comm.*, 319 U. S. 61; *People* v. *New York Central & H. R. R. R. Co.*, 138 App. Div. 601, 199 N. Y. 539; *People* v. *New York Central R. R. Co.*, 233 N. Y. 679.)

CONWAY, J. This is an action to recover a penalty under section 63-c of the Public Service Law because of the failure of the defendant to obtain authorization from the Public Service Commission to enter into a conditional sales contract for the purchase of buses. The defendant, a New York corporation, operates a bus line running between New Rochelle, New York, and Stamford, Connecticut, as well as several intrastate routes in New York connecting with this main line. The conditional sales contract into which defendant entered required a down payment before delivery and then provided for sixteen quarterly payments with interest. The total contract called for payment of $159,655.90. The contract was thereafter assigned by the contract vendor to a Pennsylvania trust company.

Subdivision 1 of section 62 of the Public Service Law insofar as material here provides as follows: " An omnibus corporation organized or existing, or hereafter incorporated, under or by virtue of the laws of the state of New York, may issue stocks, bonds, notes or other evidences of indebtedness payable on demand or at periods of more than twelve months after the date thereof * * * provided and not otherwise that there shall have been secured from the commission an order authorizing such issue * * *."

Defendant asserts, first, that it was not required to obtain authorization from the commission to make the purchase of the ten buses because a conditional sales contract is not covered by the language " stocks, bonds, notes or other evidences of indebtedness ".

It is urged that the phrase " other evidences of indebtedness " is applicable only to securities, issued to the general public, or

to a negotiable instrument. It may not be disputed that a conditional sales contract is an evidence of indebtedness, but defendant urges a construction which would make the subdivision applicable only to papers or instruments such as, or similar to, stocks or bonds or notes. The legislative history of the statute points to a different legislative intent and supports a contrary construction. Section 62 was enacted by section 2 of chapter 531 of the Laws of 1931 and was taken almost verbatim from section 55 which up to that time had applied to all common carriers including omnibus corporations. The relevant language of section 55 had remained without change since its enactment in 1907 (L. 1907, ch. 429). It then read and still reads except for the change of the word " evidence " to " evidences ": " A common carrier, railroad corporation or street railroad corporation organized * * * under * * * the laws of the state of New York, may issue stocks, bonds, notes or other evidence of indebtedness payable at periods of more than twelve months after the date thereof * * * provided and not otherwise that there shall have been secured from the commission an order authorizing such issue * * *."

Since section 62 followed the wording of section 55 the legislative background of the latter section will be helpful in indicating the proper construction. When first introduced the bill, which subsequently became section 55, read in part as follows: " * * * stocks, bonds, evidence of indebtedness or other form of security issue " (Sen. Pr. No. 682, p. 50, 1907).

Had section 55 been enacted in that form it may very well be that a proper construction would have excluded a conditional sales contract from the coverage of the statute. However, the bill was amended so that it covered instead: " * * * stocks, bonds, notes or other evidence of indebtedness " (Sen. Pr. No. 1738, p. 52, 1907). Thus the elimination of the word securities indicated that it was not the legislative intent to limit the coverage of the statute to obligations customarily issued to the general public. The addition, " notes ", which are not commonly issued for public distribution indicated a similar lack of restrictive intent. Moreover the prohibition of the statute has to do with the issuance of certificates or obligations and not with their marketable character.

Protection of the public would appear to have been the paramount design of section 55. We quote three sentences from an address made by Governor Hughes in advocating passage of the first legislation on the subject: "It is not simply or primarily the question of protection to the investor. The paramount demand is that through the improper issue of securities there shall not be provided a motive for crippling the public service or a basis for demanding extortionate returns. The power of the State should be exercised to compel respect for the public interest." (Addresses and Papers of Charles Evans Hughes, p. 112 [Putnam's Sons, 1908 ed.].) The case of *People* v. *New York Central & H. R. R. R. Co.* (138 App. Div. 601, affd. on opinion below 199 N. Y. 539), relied on by defendant in support of its construction, is in no sense a holding that the exclusive purpose of section 55 was to control the flotation of negotiable or quasi-negotiable securities by utility corporations and the subsequent practice of the Public Service Commission clearly shows that the commission did not so construe the holding of that case. The fictitious lease set up in the agreement there considered may not have been "other evidence of indebtedness" within the meaning of the statute, as pointed out by the court, but the trust certificates were clearly securities intended to be sold to the general public and so also envisioned by the terms of the lease and the statute.

From a commercial and economic standpoint the conditional sales contract and its assignment by a contract vendor realizes the same result as though (1) defendant issued a note to the seller and the seller discounted it at the assignee bank, or (2) defendant borrowed the money from the bank, giving its note in exchange, and used the proceeds to pay the seller. Clearly section 62 is to be broadly construed so as to achieve the purposes intended by its enactment, i.e., the prevention of useless and unnecessary or improper expenditures as a means of protecting the public generally.

It is next argued by defendant that Congress through legislation (the Interstate Commerce Act) has occupied the field so as to exclude applicable State legislation. We think it quite clear that on the contrary Congress has purposely excluded from the field of its legislative competency (a) small interstate omnibus companies such as defendant and (b) conditional sales

agreements of all omnibus companies whether large or small.

Congress first enacted legislation controlling the issuance of securities of motor carriers engaged in interstate commerce in 1935 when it enacted the Motor Carrier Act (U. S. Code, tit. 49, § 301 *et seq.*). That act incorporated by reference the provisions enacted for railroads in 1920 (U. S. Code, tit. 49, § 20a). Section 62 of our Public Service Law was enacted in 1931, four years before the passage of the Motor Carrier Act. Thus our State had exercised jurisdiction over the issuance of certain instruments before Congress took action. Congress has not superseded New York State action since. Section 314 of title 49 of the United States Code extends regulation only to motor carriers which have issued securities of a par value in excess of $500,000. According to the agreed statement of facts, the par value of defendant's outstanding securities, plus the face value of the conditional sales contract in question, have never exceeded $500,000. Congress has specifically omitted from the coverage of the act small interstate motor carrier companies like defendant. Section 314 provides: " Common or contract carriers by motor vehicle, corporations organized for the purpose of engaging in transportation as such carriers, and corporations authorized by order of the Commission to acquire control of any such carrier, or of two or more such carriers, shall be subject to the provisions of paragraphs 2–11, of section 20a of this title (including penalties applicable in cases of violations thereof): *Provided, however,* That said provisions shall not apply to such carriers or corporations where the par value of the securities to be issued, together with the par value of the securities then outstanding, does not exceed $500,000, nor to the issuance of notes of a maturity of two years or less and aggregating not more than $100,000, which notes aggregating such amount including all outstanding obligations maturing in two years or less may be issued without reference to the percentage which said amounts bear to the total amount of outstanding securities. In the case of securities having no par value, the par value for the purpose of this section shall be the fair market value as of the date of their issue.''

Congress, thus, has manifested no intent to regulate small interstate omnibus companies such as defendant. At a hearing before the Senate Committee considering this legislation,

Joseph B. Eastman, Federal Coordinator of Transportation, under whose direction the proposed act was drawn said: " * * * we do not undertake to regulate the issue of securities here until the operator acquires sizable proportions." (Hearings before Senate Committee on Interstate Commerce, 74th Cong., 1st Sess., p. 81 [1935].)

Moreover, it would appear that Congress has not chosen to exercise jurisdiction over conditional sales contracts of any carrier whatever its size on the theory that only securities sold to the public should be regulated. Section 314 (*supra*) speaks of the par value or fair market value of " securities " issued as determining whether Federal regulation applies. The Interstate Commerce Commission has held that the language of section 20a, incorporated by reference in section 314, does not give jurisdiction over conditional sales contracts because they are not " securities " within the meaning of subdivision (2) of section 20a. (*Lehigh Valley R. R. Co. Conditional Sale Contract,* 233 I. C. C. 359.) That subdivision provides: " It shall be unlawful for any carrier to issue any share of capital stock or any bond or other evidence of interest in or indebtedness of the carrier (hereinafter in this section collectively termed ' *securities* ') " without an order by the commission authorizing such issue. (Emphasis supplied.) The instruments are collectively defined as " securities " and the issue to be tried, as the decision of the commission indicates, was whether " a conditional-sale contract covering the acquisition of railroad equipment * * * constitutes an issue of a security within the purview of section 20a(2) of the act." (233 I. C. C. 359, 360, *supra*.) The scheme of the Federal statute apparently separates promotional obligations such as stocks and bonds from instruments for credit purchases such as notes and conditional sales agreements. In section 62 of our Public Service Law no such differentiation is made among " stocks ", " notes ", " bonds " and " evidences of indebtedness ".

Despite the fact that there is no conflict between the State and Federal statutes, the defendant argues that there is a conflict in policy; that although Congress has enacted no regulatory legislation covering the contract in question there is a policy expressed in the Federal legislation quoted above which indicates a Congressional intent to pre-empt the field of financial

affairs of interstate carriers, and, accordingly, the State may not be permitted to fill in the gaps in the existing legislation. The doctrine of occupation of the field is customarily brought to our attention only after the National Government has chosen to act in connection with subject matter which the State also seeks to regulate. It was early said that State legislation is invalidated only if the Federal and State regulation cannot either practically or logically exist together. (*Sinnot* v. *Davenport,* 22 How. [U. S.] 227, 243.) Even more important is the doctrine, enunciated in a long line of cases, that '' the intention of Congress to exclude States from exerting their police power must be clearly manifested ''. (*Napier* v. *Atlantic Coast Line,* 272 U. S. 605, 611, and cases there cited; *Allen-Bradley Local* v. *Board,* 315 U. S. 740, 749, and cases cited.) Here we have in section 62 of the Public Service Law an exercise of police power affecting a bus line, a public utility, rendering a public service in the community. The basic applicable canon of statutory construction governing all the variations of exercisable police power was well stated as follows in *Maurer* v. *Hamilton* (309 U. S. 598, 614): '' As a matter of statutory construction Congressional intention to displace local laws in the exercise of the commerce power is not, in general, to be inferred unless clearly indicated by those considerations which are persuasive of the statutory purpose. This is especially the case when public safety and health are concerned.'' (See to the same general effect, *Ill. Cent. R. R. Co.* v. *Public Utilities Comm.,* 245 U. S. 493, 510; *Southern Pacific Co.* v. *Arizona,* 325 U. S. 761, 766.) It is important for the health, comfort, convenience and safety of residents of the State who must use the buses of defendant that there be no interruption in their operation due to repossession of them by a distant creditor by reason of the waste or financial incompetence of the defendant.

The Supreme Court has had no difficulty in permitting a State to fill in a gap in existing Federal legislation. Thus in the case of *Kelly* v. *Washington* (302 U. S. 1) the respondents operated a fleet of motor tugs engaged in interstate commerce. The Federal Motor Boat Act required certain lights, whistles, life preservers and fire extinguishment equipment but did not provide for an inspection of the hull and machinery of the boat. The court held that regulations embodied in the State statute

could be applied in connection with the inspection of the hull and machinery. So also similarity of State and Federal legislation does not necessarily lead to the striking down of the former. In *California* v. *Zook* (336 U. S. 725) a State statute prohibited the sale or arrangement of transportation over the public highway of the State if the transporting carrier had no permit from the Interstate Commerce Commission. The State statute was virtually identical with the Federal statute but was held valid even though heavier penalties for violations were provided for in the State law and even though there was a possibility of double punishment. In *Allen-Bradley Local* v. *Board* (315 U. S. 740, *supra*) the complete system of Federal regulation of labor relations promulgated in the National Labor Relations Act was held not to bar State police action directed against mass picketing and other strike disorders. In *Parker* v. *Brown* (317 U. S. 341) the Supreme Court upheld a California plan for pooling and elimination of competition in the raisin industry to support prices despite the fact that the Secretary of Agriculture was authorized to establish a similar plan but had not done so. Of like nature were *N. W. Bell Tel. Co.* v. *Ry. Comm.* (297 U. S. 471); *Welch Co.* v. *New Hampshire* (306 U. S. 79), and *Maurer* v. *Hamilton* (309 U. S. 598, *supra*).

We had a similar problem before us in *Matter of Davega-City Radio* v. *State Labor Relations Bd.* (281 N. Y. 13) which was a proceeding to set aside orders of the State Labor Relations Board made by it in a proceeding charging the petitioner with violations of the State Labor Relations Act on the ground that the National Labor Relations Act precluded State regulation of the same subject matter. There was no saving clause in the National act. Both the National and State acts were virtually identical in aims and provisions. We reached the conclusion that the State board could enforce the State act until such time as it might be ousted by the exercise by the National board of its jurisdiction under the National act.

That brings us to the final point urged upon us by the defendant that since it operates in interstate commerce it would constitute an unconstitutional encroachment upon the power granted Congress over interstate commerce to require defendant to obtain authorization of the Public Service Commission to execute the conditional sales contract here involved.

The Commerce Clause of the Constitution which gives the National Government power to regulate interstate commerce does not exclude all power of regulation by the States. Amendment X of the United States Constitution provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." This constitutional principle has been expressed in the following language by the Supreme Court in *Halter* v. *Nebraska* (205 U. S. 34, 40–41): "Another vital principle is that, except as restrained by its own fundamental law, or by the Supreme Law of the Land, a State possesses all legislative power consistent with a republican form of government; therefore each State, when not thus restrained and so far as this court is concerned, may, by legislation, provide not only for the health, morals and safety of its people, but for the common good, as involved in the well-being, peace, happiness and prosperity of the people." In the absence of conflicting legislation by Congress it has been recognized from an early date that the States may make laws governing matters of local concern which to some degree affect or even regulate interstate commerce. (*Willson* v. *Black Bird Creek Marsh Co.*, 2 Pet. [U. S.] 245; *Cooley* v. *Board of Wardens of Port of Philadelphia*, 12 How. [U. S.] 299.) Of course, in a field where national uniformity is demanded, a State will often not be permitted to legislate even though there is no Federal statute covering the subject matter. (*Gibbons* v. *Ogden*, 9 Wheat. [U. S.] 1; *Brown* v. *Maryland*, 12 Wheat. [U. S.] 419; *Di Santo* v. *Pennsylvania*, 273 U. S. 34.) The problem is one of balancing State interests against national interests. The State statute will invariably be upheld, in the absence of a requirement of national uniformity or of existing Congressional legislation covering the subject matter, unless the application of the State statute *obstructs* interstate commerce. (*Southern Pacific Co.* v. *Arizona*, 325 U. S. 761, *supra*.) On the other hand measures reasonably calculated to increase the safety of railway travel without obstructing interstate transportation have been upheld. (*N. Y., N. H. & H. Railroad* v. *New York*, 165 U. S. 628; *Atlantic Coast Line* v. *Georgia*, 234 U. S. 280; *Missouri Pacific R. Co.* v. *Norwood*, 283 U. S. 249; *Terminal Assn.* v. *Trainmen*, 318 U. S. 1, 8.) State highways are, of course, subject to regulation by the

States in the public interest. (*Eichholz* v. *Comm.*, 306 U. S. 268; *S. C. Hwy. Dept.* v. *Barnwell Bros.*, 303 U. S. 177; *Bradley* v. *Pub. Util. Comm.*, 289 U. S. 92; *Sproles* v. *Binford*, 286 U. S. 374.)

Here the State statute requiring authorization of the Public Service Commission before an omnibus corporation may enter into a conditional sales contract was in the interest of the public. Such a regulation helps to ensure the general financial responsibility of a public utility operating under a franchise granted by this State. A bus line which is financially sound is less likely to have interruptions of service and the public will be protected against the possibility of sudden deprivation of bus service. The public need for efficient and uninterrupted transportation is thus served by our State statute. It is not drastic or discriminatory but is a reasonable exercise by the State of its police power to protect customers and creditors of a small bus company from the danger of high rates or loss of service resulting from uncontrolled financing.

Before Congress gave the Interstate Commerce Commission power to regulate the securities of railroads, such regulation was exercised by State commissions. We sustained such regulation by the Public Service Commission in *People* v. *New York Central & H. R. R. R. Co.* (138 App. Div. 601, affd. 199 N. Y. 539, *supra*). Only after the Interstate Commerce Act was amended by the Transportation Act of 1920, did this court hold that a railway corporation organized under the laws of this State might issue securities and assume obligations without securing the authorization of the Public Service Commission. (*People* v. *New York Central R. R. Co.*, 233 N. Y. 679.) Clearly, securities of interstate carriers may be regulated either by the State or by the Federal Government. As long as the Federal Government does not choose to regulate the execution of conditional sales contracts, there is no reason why our Public Service Commission should not continue such regulation through the provisions of section 62 of our Public Service Law.

The judgment of the Appellate Division should be affirmed, without costs.

LOUGHRAN, Ch. J., LEWIS, DESMOND, DYE, FULD and FROESSEL, JJ., concur.

Judgment affirmed.