OPINION OF THE COURT
Shlomo S. Hauler, J.
In this nonpayment proceeding, respondents Robert and Jes *1011 sica Dowling (respondents or Dowling) move for an order “dismissing the petition for petitioner’s failure to comply with the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. [‘FDCPA’ or ‘Act’].” Specifically, respondents argue that the written three-day demand dated June 30, 1999 (Rent Demand) and the petition filed in this proceeding violate the provisions of the FDCPA. Petitioner Missionary Sisters of the Sacred Heart, Inc. (petitioner or Missionary) opposes the motion.
BACKGROUND
The Missionary commenced this proceeding to collect alleged rental arrears of $3,804.90 for the months of June and July 1999 at $1,902.45 per month. Pursuant to RPAPL 711 (2), petitioner demanded payment of the above amount via a Rent Demand that was purportedly signed by Sister Agnes Santo-massimo, the Treasurer of the Missionary. On the left side of the Rent Demand below the signature line, there is a reference to a “Case Code: 6418-097.” It is uncontroverted that the Rent Demand was served on respondents by a licensed process server who affixed a copy of the Rent Demand to the door of the subject premises and then mailed an additional copy to them pursuant to RPAPL 735.
When full payment was not tendered, petitioner commenced this proceeding by notice of petition and petition. The notice of petition contained a reference to “Case Code 6418-104.” Pursuant to RPAPL 741, the petition was verified on July 15, 1999 by a member of petitioner’s counsel’s firm on behalf of the Missionary.
Respondents vacated the subject premises on July 26, 1999. Three days later on July 29, 1999, respondents interposed a succinct answer in person alleging that “[Petitioner] refused to let movers in and counterclaim [sic].” While respondents later retained counsel, the answer was never amended.[1]
MOTION TO DISMISS
It is well settled that in determining a motion to dismiss pursuant to CPLR 3211, the courts must liberally construe the *1012 pleadings, accept the facts as alleged to be true and interpret them in the light most favorable to the nonmovant, the petitioner herein. (See, Leon v Martinez, 84 NY2d 83 [1994].)
FAIR DEBT COLLECTION PRACTICES ACT
In 1977, the Congress enacted the FDCPA to regulate the manner in which “debt collectors” may attempt to collect personal “debts.”[2] A “creditor” is not included in the definition of a “debt collector.” (See, 15 USC § 1692a [6] [A].) The purpose behind the FDCPA was to eliminate “the use of abusive, deceptive, and unfair debt collection practices by many debt collectors.” (15 USC § 1692 [a].)
The Act prohibits debt collectors from using “any false, deceptive, or misleading representation or means in connection with the collection of any debt.” (15 USC § 1692e.) The debt collector must inform the debtor within five days of his/her initial “communication” of the amount of the debt and upon the debtor’s failure to dispute the debt within 30 days “the debt will be assumed to be valid by the debt collector.” (15 USC § 1692g [a] [3].) This is commonly known as a validation notice. The debt collector is also required to disclose that he/she is “attempting to collect a debt and that any information obtained will be used for that purpose.” (15 USC § 1692e [11].)
The FDCPA specifically prescribes certain statutory penalties that a debtor may recover due to the debt collector’s failure to comply with any of the Act’s provisions. They include: “any actual damage sustained” due to noncompliance (15 USC § 1692k [a] [1]); “in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000” (15 USC § 1692k [a] [2] [A]); and “the costs of the action, together with a reasonable attorney’s fee as determined by the court.” (15 USC § 1692k [a] [3].)
For more than 20 years, the effects of this extremely powerful Federal law had little or no impact on summary nonpayment proceedings. This changed in the aftermath of a tenant’s Federal lawsuit against a landlord’s firm in Romea v Heiberger & Assocs. (988 F Supp 712 [SD NY 1997]). In Romea, the tenant claimed that a rent demand signed by the landlord’s attorney violated the provisions of the FDCPA. The District Court agreed with the tenant holding that rent was a “debt” and a *1013 rent demand was a “communication” within the meaning of the FDCPA. The District Court also certified an interlocutory appeal to the United States Court of Appeals for the Second Circuit in Romea v Heiberger & Assocs. (988 F Supp 715 [SD NY 1998]) which affirmed the District Court’s determination in Romea v Heiberger & Assocs. (163 F3d 111 [2d Cir 1998]). As a result, landlord’s attorneys must be cognizant that “sending” rent demands which do not comply with the strict requirements of the FDCPA may subject them to statutory penalties.
DISCUSSION
Respondents seek to enlarge the long reach of Romea (supra) and its progeny. Respondents argue that the Rent Demand, which was allegedly signed by an officer of petitioner, nevertheless violates the provisions of the FDCPA because it was drafted by petitioner’s attorneys. The only proof adduced by respondents is that the Rent Demand contained a file number which later appeared on the notice of petition and petition sent out by petitioner’s attorney. Respondents next contend that if the petition is the initial “communication” (and not the Rent Demand), then the petition violates section 1692g as it does not contain a validation notice. In either event, whether the Rent Demand or the petition violates the Act, respondents conclude that the petition must be dismissed as the provisions of the FDCPA preempt the conflicting requirements of the RPAPL.
Rent Demand
The recent case of Goldstein v Hutton, Ingram, Yuzek, Gainen Carroll & Bertolotti (39 F Supp 2d 394 [SD NY 1999]) serves as the primary basis underlying respondents’ argument that the Rent Demand violates the FDCPA. In Goldstein, a tenant brought a class action lawsuit against a law firm alleging FD-CPA violations. The rent demand was signed by the managing agent, but it was printed on the law firm’s letterhead and the firm’s name and address appeared on the mailing envelope and the certified mail receipt. In such a situation, the District Court held that it amounted to the law firm “sending” the rent demand.
Here, the facts are not so compelling. The only evidence that the Rent Demand was sent by petitioner’s counsel is a refuted allegation that it was not signed by an officer of petitioner and a file number maintained by petitioner’s counsel which supposedly appears on both the Rent Demand and the notice of petition and petition.
*1014 With regard to the alleged dubious signature, Sister Agnes Santomassimo categorically denies the same and avers that her signature appears on the Rent Demand which she recalls signing. The standard of review on a motion to dismiss requires this court to accept the facts as alleged by petitioner to be true.
Even more puzzling is the allegation of an identical file number on both the Rent Demand and on the notice of petition and petition. They are not the same. The Rent Demand has a file number of 6418-097 and the notice of petition has a different file number of 6418-104. In any event, it is hard to fathom that a “ least sophisticated consumer [respondents] would have the false impression that a third party [petitioner’s counsel] was collecting the debt’ ” from viewing the file number on the Rent Demand in isolation or even together with the file number on the notice of petition. (See, Franceschi v Mautner-Glick Corp., 22 F Supp 2d 250, 255 [SD NY 1998].)
This court also rejects respondents’ fallback position that since the Rent Demand was probably drafted by petitioner’s counsel, it is a “communication” that comes under the purview of section 1692a (2) and does not fall under the creditor exception of section 1692a (6) (A). A landlord may seek the advice of counsel and counsel may assist a client in drafting a rent demand so long as it is not “sent” by counsel.
Petition
Respondents cleverly present a novel issue as to whether the petition is a “communication” subject to the provisions of the FDCPA. This court holds it is not.
In at least two areas of disclosure, the courts have specifically held that the Act exempts a formal pleading made in connection with a legal action. In Romea (supra) the court stated that section 1692e (11) exempts “formal legal pleadings from the FDCPA’s requirement that a debt communication disclose ‘that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose.’ ” (Romea v Heiberger & Assocs., supra, 163 F3d, at 118, n 8.) While Romea (supra) did not state when this exemption applies, a fair reading of section 1692e (11) appears to encompass initial and subsequent communications.
The second area of disclosure exempted by the Act is communications in connection with debt collection pursuant to section 1692c (c). Under this section, a debt collector must cease communication with a debtor who refuses to pay, except that *1015 the debt collector can state that he/she “may invoke” or “intends to invoke a specified remedy” such as pursuing legal remedies and notifying the debtor of such specific remedies (i.e., filing a lawsuit). (15 USC § 1692c [c] [2], [3].)
In Heintz v Jenkins (514 US 291, 296 [1995]), the Supreme Court held that “an ordinary court-related document” does not come within the ambit of the Act because it “does, in fact, ‘notify’ its recipient that the creditor may ‘invoke’ a judicial remedy.” Although the Supreme Court did not interpret the Act to create a general exception for “all litigating attorneys,” it postulated “that it would be odd if the Act empowered a debt-owing consumer to stop the ‘communications’ inherent in an ordinary lawsuit and thereby cause an ordinary debt-collecting lawsuit to grind to a halt.” (Supra, at 296.) Whether the validation notice required under section 1692g applies to formal pleadings is an open question. Unlike the prior sections, section 1692g does not have a specific exemption for formal pleadings.
In Travieso v Gutman, Mintz, Baker & Sonnenfeldt (1995 US Dist LEXIS 17804, 1995 WL 704778 [ED NY, Nov. 16, 1995, Weinstein, J.]) tenants brought a declaratory judgment action against a landlord’s firm seeking damages for various violations of the Act. The District Court opined that “[t]he FDCPA is intended to protect persons, such as plaintiffs, from abusive debt collection practices at the earliest stage. Once the dispute reaches the courts, the purposes behind the FDCPA are moot.” (Travieso v Gutman, Mintz, Baker & Sonnenfeldt, 1995 US Dist LEXIS 17804, *11, 1995 WL 704778, 4.) Such a holding, however, may be too pervasive in light of the holding in Heintz v Jenkins (supra).
It appears that District Court came to the above conclusion because the commencement of a lawsuit by a formal pleading would not further the Act’s intended purpose of forestalling abusive debt collection practices. The debtor is naturally protected and safeguarded when he or she comes within the sphere of the court’s influence. If any abusive debt collection practices occur, the debtor may seek appropriate relief from the court. Indeed, the power of the judiciary in such a situation is broader than the narrow and specific civil liability contained in section 1692k of the Act.
If this court were to take respondents’ argument to its logical conclusion, any summons and complaint filed in State and Federal courts that were personally delivered to the debtor would invariably violate the provisions of the FDCPA if no *1016 validation notice was contained therein.[3] If such a substantial change was intended, the Act would have so stated or the provisions of the Federal Rules of Civil Procedure would have been amended. As implicitly stated by the Supreme Court in Heintz, this court cannot fathom that Congress intended such a narrow reading so as to “cause an ordinary debt-collecting lawsuit to grind to a halt.” (Heintz v Jenkins, supra, at 296.)
The Supreme Court’s conclusion probably stems from section 1692c (b), which generally prohibits third-party communications with the collection of any debt, but exempts from that prohibition any communication undertaken with “the express permission of a court of competent jurisdiction.” Assuming, ar-guendo, that the petition is deemed a communication as defined under the Act, the filing of the petition and prosecution of this proceeding are subject to this exception.
While merely persuasive, the Federal Trade Commission, which is charged with compliance of the Act, has also acknowledged that the filing of a complaint is not a “communication” under the FDCPA. (See, 53 Fed Reg 50097, 50100 [Dec. 13, 1988] [“filing or service of a complaint or other legal paper * * * is not a ‘communication’ covered by the FDCPA”].)
FDCPA Violation is not a Defense to a Summary Proceeding
Assuming, arguendo, that either the Rent Demand or the petition violates the provisions of the FDCPA, it may give rise to FDCPA liability but it does not serve as a defense to the underlying eviction proceeding. This appears to be the holding of both the First and Second Departments of the Appellate Term as well as the Federal courts.
In the recent case of Wilson Han Assn. v Arthur (NYLJ, July 6, 1999, at 29, col 4 [App Term, 2d Dept]), the Appellate Term squarely rejected the tenant’s argument that a nonpayment proceeding must be dismissed where the rent demand violated the provisions of the FDCPA. The Appellate Term in Arthur clearly held that “dismissal of a nonpayment proceeding brought by a landlord-creditor, based on an alleged violation by his agent, is beyond the scope of the FDCPA.” (Supra, at 29, col 5.)
The Appellate Term, First Department, also implicitly dealt with this issue in Gerontis v Schwartz (NYLJ, Oct. 28, 1998, at *1017 28, col 4 [App Term, 1st Dept]). In Gerontis, a nonpayment proceeding, the parties entered into a stipulation of settlement wherein the respondent agreed to pay $7,000 and petitioner agreed to repair certain conditions in the subject premises by a date certain. In the event of a default under the terms of the stipulation, the parties agreed that the proceeding could be restored for appropriate relief. Petitioner moved for a final judgment due to respondent’s failure to make payment under the terms of the stipulation. The court granted petitioner a final judgment in the undisputed sum of $7,000. Respondent appealed the judgment and moved the court to set an undertaking which it set in the amount of $10,000. Instead of posting the undertaking, respondent filed for bankruptcy protection. Ultimately, the Bankruptcy Court vacated the automatic stay which respondent had obtained by virtue of her bankruptcy filing. Respondent was then evicted from the subject premises.
Thereafter, respondent moved to vacate the judgment on the ground that the written rent demand violated the provisions of the FDCPA. The court denied respondent’s motion finding that: “the FDCPA does not pertain to this proceeding because respondent charted her course in entering into the stipulation. Even if this court were to find that an examination of this proceeding in light of the FDCPA were required, the result would not change. The FDCPA statute of limitations with regard to the three-day notice issued here has long since passed in this 1996 summary proceeding. 15 USC Sec. 1692(d).”
The Appellate Term unanimously affirmed the above holding without addressing the FDCPA claim. While this was a sub si-lentio rejection of the respondent’s FDCPA claims, it appears that the running of the FDCPA Statute of Limitations would have been irrelevant because the mere violation of the FDCPA should have been sufficient grounds to dismiss the underlying nonpayment proceeding.
Respondent also appealed the Bankruptcy Court’s decision. The District Court affirmed the Bankruptcy Court’s decision finding that “Schwartz has failed, both in state and federal court, to set forth any precedent supporting the application of the FDCPA as a defense in an eviction proceeding, much less decisive precedent on this point that would indicate that the state courts ignored applicable federal law.” (See, Gerontis v Schwartz, NYLJ, Apr. 14, 1999, at 34, cols 3, 5 [SD NY].)
In Romea v Heiberger & Assocs. (988 F Supp 715, 718, n 12 [SD NY 1998], supra), while deferring to the New York State courts on this issue, the District Court also stated that a FD- *1018 CPA violation is not a defense to a summary proceeding: “In view of the Supreme Court’s holding that violation of the federal antitrust laws is not a defense to an action to recover the agreed price for goods sold and delivered, except in the rarest of circumstances [citations omitted], such a result apparently would be unlikely.” (Emphasis added.)
There is also authority that the FDCPA cannot be affirmatively utilized as a “sword [by debtors] and not as the shield that Congress intended it to be” to attack the merits of the underlying action to recover a debt. (Young v Citicorp Retail Servs., 1997 WL 280508, 6, 1997 US Dist LEXIS 22669, *18 [DC Conn, May 20, 1997, Nevas, J.], affd 159 F3d 1349 [2d Cir 1998].) Notwithstanding other lower court decisions to the contrary, this court shall follow the aforementioned burgeoning precedent in both State and Federal courts.[4]
Preemption
In the. aftermath of Romea (supra), much has been said that the provisions of RPAPL 711 (2) are inconsistent with the FD-CPA and the State law is, therefore, preempted. (See, 15 USC § 1692n; Eina Realty v Calixte, 178 Misc 2d 80 [Civ Ct, Kings County 1998].)
The preemption doctrine requires State laws to defer to Federal legislation when any of these elements exists: (1) the scheme of Federal legislation is so complete and pervasive that no room is left for the State to supplement it; (2) the Federal interest is so dominant that State laws on the same subject must yield; or (3) the enforcement of the State statute presents a substantial conflict with the administration of the Federal program. (See, City of New York v Job-Lot Pushcart, 88 NY2d 163 [1996], cert denied 519 US 871 [1996]; Matter of Marino v Ramapo, 68 Misc 2d 44 [Sup Ct, Rockland County 1971]; 20 NY Jur 2d, Constitutional Law, § 104.)
However, “local legislation survives when its conflict with federal law is indirect and not wholly repugnant to the federal statute, so that in the end the two are reconciled.” (20 NY Jur 2d, Constitutional Law, § 104, at 180-181, citing People v Altman, 61 Misc 2d 4 [Dist Ct, Nassau County 1969].) “For a conflict between an act of Congress and a state or local law to *1019 render the latter void, the repugnance or conflict must be direct and positive so that the two acts cannot be reconciled or consistently stand together. The mere existence of federal legislation within a particular area does not prevent the state from dealing with matters within the same area by means of statutes enacted under the police power, where there is no doubt that the local law can be enforced without clashing with the federal law and without in any way impairing that law.” (20 NY Jur 2d, Constitutional Law, § 105, at 183, citing People v County Transp. Co., 303 NY 391 [1952], appeal dismissed 343 US 961 [1952]; Recknagel v Finkelstein, 275 App Div 684 [2d Dept 1949]; Molnar v Curtin, 273 App Div 322 [1st Dept], affd 297 NY 967 [1948].)
The Supreme Court is also generally hesitant to construe a State law so as to bring it into conflict with a Federal law. (See, Local No. 8-6, Oil, Chem. & Atomic Workers Intl. Union v Missouri, 361 US 363 [1960].) Absent either an explicit or implicit manifestation of congressional preemptive intent, the presumption is that in enacting legislation, Congress did not intend to preempt the States’ power to regulate matters of local concern. (Matter of Holtzman v Oliensis, 91 NY2d 488 [1998].)
The Second Circuit in Romea explicitly stated in footnote 10 that there is no conflict between RPAPL 711 (2) and the provisions of the FDCPA as follows: “At times, Heiberger [the defendant landlord’s firm] portrays the FDCPA and Article 7 as actually conflicting. This of course is not true. An attorney representing a landlord who chooses to send a § 711 notice can readily conform the notice to the requirements of the FDCPA without violating any provisions of Article 7.” (Romea v Heiberger & Assocs., 163 F3d 111, 118, n 10, supra [emphasis added].)
Although Romea further stated that if there was a conflict, “Article 7, and not the FDCPA * * * would have to yield,” this was a secondary argument which cannot otherwise be construed to hold that there is a conflict between the two. (Romea v Heiberger & Assocs., 163 F3d 111, 118, n 10, supra.)
As a condition precedent to a nonpayment proceeding, RPAPL 711 (2) provides that the demand for rent must be made on at least three days’ notice. It is clear that the landlord or its managing agent can comply with the dictates of RPAPL 711 (2) by demanding the rent personally and/or in writing without violating any provisions of the FDCPA. As such, there is no per se conflict between RPAPL 711 (2) and the FDCPA. The two laws are easily reconciled and can consistently stand together.
*1020 Upon application, there may be a possible conflict when a landlord’s attorney “sends” the rent demand without regard to the FDCPA, as in Romea (supra). Such an occurrence, however, would be an indirect conflict with the Federal law but “not wholly repugnant * * * so that in the end the two are reconciled.” (People v Altman, supra, at 5.)
Given that the Supreme Court hesitates to construe a State law in conflict with a Federal law, this court chooses to resolve any perceived conflict between article 7 and the FDCPA in favor of consistency and propriety. (See, Local No. 8-6, Oil, Chem. & Atomic Workers Intl. Union v Missouri, supra; Matter of Holtzman v Oliensis, supra.)
CONCLUSION
For the foregoing reasons, this court denies respondents’ motion in its entirety.

. Clearly, respondents failed to include a violation of the FDCPA as a defense to this proceeding. It is arguable that respondents are foreclosed from moving to dismiss on such a ground without first seeking leave of court pursuant to CPLR 3025 (b) to amend the complaint to add the alleged violations of the FDCPA as a defense. In any event, since issue has been joined by interposition of an answer, a motion for summary judgment (CPLR 3212) seeking dismissal of the petition based on such an enumerated defense or counterclaim would have been more appropriate.

. In 1986, the Congress amended the FDCPA to delete the original exemption which had excluded from the Act coverage of “any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client.” (See, Pub L 99-361, 100 US Stat 768 [July 9, 1986].)

. Under CPLR 308 (1) and 320 (a) and Federal Rules of Civil Procedure, rule 12 (a), if personal service of a summons and complaint was made, then an answer would have to be interposed within 20 days, which is 10 days less than the 30-day validation period called for in section 1692g.

. After this court substantially completed this decision/order, the Honorable Howard Malatzky, J.H.C., also held that an alleged violation of the FD-CPA concerning a rent demand is not a defense to a nonpayment proceeding. (See, East 77th Realty v Alin, NYLJ, Nov. 24, 1999, at 32, col 2 [Civ Ct, NY County].)