*64 OPINION OF THE COURT
Kenneth L. Gartner, J.
In this case of apparent first impression, the defendant credit card debtors contend that the Federal Fair Debt Collection Practices Act ([FDCPA] 15 USC § 1601 et seq.), and/or New York’s General Business Law, have preempted New York’s common-law doctrine of account stated as applied to consumer transactions.
The common-law doctrine of account stated is one rooted in medieval England. (Teeven, A History of Legislative Reform of the Common Law of Contracts, 26 U Tol L Rev 35, 46 [1994].) It is widely accepted, not only in New York, but in most jurisdictions, as a basic legal doctrine. (See, e.g., First Union Discount Brokerage Servs. v Milos, 997 F2d 835, 841 [11th Cir 1993]; Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v Louisiana Hydrolec, 854 F2d 1538, 1542 [9th Cir 1988]; Headwear, U.S.A. v Stange, 166 FRD 36, 37 [D Kan 1996].) Its preemption would have a profound effect.
All of the above-captioned defendants have moved by a single motion applicable to all of the above-captioned cases for reargument of identical decisions in the respective actions. These identical decisions granted the plaintiff summary judgment on the ground of account stated.
Reargument is granted. On reargument, the court adheres to its original decision for the reasons listed below.
In its original decision, this court observed that an account stated is an agreement between the parties to an account, based upon prior transactions between them, with respect to the correctness of the account items and the balance due (e.g., Jim-Mar Corp. v Aquatic Constr., 195 AD2d 868 [3d Dept 1993]). The agreement may be implied from the retention of the account rendered for an unreasonable period of time without objection and from the surrounding circumstances. (Jim-Mar Corp. v Aquatic Constr., supra.) Based upon this doctrine, this court granted summary judgment to the plaintiff and against the defendants.
The defendants first argue that the principle of an implied account stated is contrary to the public policy of this State as expressed in General Business Law § 517. General Business Law § 517 provides that: “No agreement between the issuer and the holder [of debit cards and credit cards] shall contain any provision that a statement sent by the issuer to the holder shall be deemed correct unless objected to within a specific pe *65 riod of time. Any such provision is against public policy and shall be of no force or effect.”
The defendants’ argument on this score is rejected. This provision simply prohibits a credit or debit card issuer — in what is essentially a contract of adhesion — from imposing a strict time requirement for the dispute of debts. The effect of such a contractual provision, if enforceable, would be to strip the courts, when ruling on a claim of account stated, of the power to determine what is or is not an “unreasonable” time for the debtor to have retained the account without objection. Thus, while prohibiting the contractual setting of a “specific period” after which an account will be deemed stated, this section does not prohibit any recovery based on account stated. (See, Chase Manhattan Bank v Hobbs, 94 Misc 2d 780, 786 [Civ Ct, Kings County 1978] [in action brought by financing agency against retail buyer to recover on credit card charges “the plaintiff introduced into evidence various statements which indicated that the defendant had utilized his credit card to make retail purchases * * * and that no part of this amount had been paid. This establishes plaintiff’s cause of action for an account stated”].)
The defendants next argue that the common-law doctrine of account stated has been Federally preempted by the FDCPA, in that language of 15 USC § 1692g (c) which provides: “The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer.”
Since the raison d’etre of account stated is the assumption that the debtor’s failure to dispute an account rendered to the debtor implies the debtor’s agreement to the terms of the account, the plain language of this statute would appear to preclude recovery on the theory of account stated if the transaction falls within the ambit of the FDCPA. The fact that neither the defendants nor the plaintiff have been able to cite any prior case addressing this issue is not conclusive. As observed in Missionary Sisters of Sacred Heart v Dowling (182 Misc 2d 1009, 1012 [Civ Ct, NY County]), “[flor more than 20 years, the effects of this extremely powerful Federal law had little or no impact on summary nonpayment proceedings.” In Romea v Heiberger & Assocs. (163 F3d 111 [2d Cir 1998]), however, it was suddenly determined that the FDCPA preempted New York’s Real Property Actions and Proceedings Law with respect to the three-day demands predicate to residential summary nonpayment proceedings. Thus, what this court must *66 determine here is whether, after an almost quarter-century hiatus, defendants’ counsel have properly discerned and raised another heretofore unperceived effect of this extremely powerful Federal law.
15 USC § 1692g (c), however, specifically prohibits courts from construing as an admission of liability by the consumer only a failure to dispute the validity of a debt “under this section.” The FDCPA — and thus section 1692g of it — applies only to communications sent out by third-party commercial debt collectors. The FDCPA does not apply to communications sent out by creditors themselves. (Missionary Sisters of Sacred Heart v Dowling, supra; Mendez v Apple Bank for Sav., 143 Misc 2d 915 [Civ Ct, NY County 1989].) Section 1692g (c)’s effect, therefore, is to prohibit a court only from finding that an account has been stated as the result of a consumer’s failure to have disputed the validity of a debt in response to a communication sent out by a third-party commercial debt collector falling under the regulation of 15 USC § 1692g. Section 1692g (c) does not prohibit a court from finding that an account has been stated as a result of a consumer’s failure to have disputed bills or invoices sent to the consumer by the creditor itself.