Allen v Whidbee (2025 NY Slip Op 25176)

[*1]

Allen v Whidbee

2025 NY Slip Op 25176

Decided on August 1, 2025

City Court Of Yonkers

Medina, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on August 1, 2025
City Court of Yonkers

Sonia Allen, Plaintiff

against
Lola Whidbee, Defendant

Index No. CV-0252-24

Stephen P. Dewey, Esq.
PO Box 2511
Briarcliff Manor, NY 10510
Lee J. Sauerhoff, Esq.
Legal Services of the Hudson Valley
30 South Broadway, 6th Floor
Yonkers, NY 10701

Ada D. Medina, J.

The following papers numbered 1-7 were read and considered on plaintiff's motion for summary judgment (CPLR § 3212) and memorandums of law related to the interest rate for consumer debt and consumer credit transactions.
Papers Numbered
Notice of Motion and Affidavits Annexed 1
Affirmation/Affidavits in Opposition 2
Replying Affirmations/Affidavits 3
Summons and Verified Complaint 4
Answer 5
Filed Papers 6,7
Factual Background
On March 11, 2024, plaintiff filed a summons and verified complaint seeking $9,000.00 from defendant for non-payment of rent. On April 21, 2025, this Court granted, in part, plaintiff's motion for summary judgment (CPLR § 3212). Defendant concedes she owes $9,000.00 in unpaid rent pursuant to the parties' lease agreement, however, this Court allowed defendant's counterclaim for alleged violations of the warranty of habitability to proceed (Romano, J.; RPL § 235-b). This matter is currently scheduled for trial on August 5, 2025, to determine whether defendant is entitled to any abatement on the amount owed. 
The portion of plaintiff's summary judgment motion related to the applicable statutory interest rate for consumer debt and consumer credit transactions was held in abeyance (Romano, J.; CPLR § 5004). This issue has been brought to this Court's attention, not only in the instant matter, but in numerous matters before this Court. The instant matter is the first time a plaintiff and defendant disputed the issue in motion form. Therefore, this Court provided the parties an opportunity to submit additional memorandums of law on the disputed interest rate by May 30, 2025 (Romano, J.). Plaintiff and defendant filed further memorandums of law on May 28, 2025 and May 30, 2025 respectively.
The Parties' Arguments
Plaintiff asserts the statutory interest rate on a monetary judgment in this matter, if awarded, should accrue at 9% from June 1, 2022. Plaintiff contends recent changes in the law regarding consumer debt and consumer credit transactions, which reduce interest rates from 9% to 2%, do not apply to judgments related to residential rent. Specifically, plaintiff argues residential rent is not a consumer debt nor a consumer credit transaction subject to the new interest rate of 2%. Therefore, plaintiff argues "[j]judgments for rent should still be subject to the statutory interest rate of 9%" (plaintiff's mem of law ¶ 2).
In opposition, defendant relies on the "Fair Consumer Judgment Interest Act" which changed the interest rate on judgments for consumer debt and consumer credit transactions to 2% (CPLR § 5004 [a]; defendant's opp, defense counsel's affirmation ¶ 30). Defendant asserts "[r]ent is quintessential to 'family or household purposes'" therefore fitting the definition of consumer debt (CPLR § 5004 [b]; defendant's opp, defense counsel's affirmation ¶ 32).
Fair Consumer Judgment Interest Act ("FCJIA")
The Fair Consumer Judgment Interest Act ("FCJIA") was amended and effective as of April 30, 2022. The FCJIA states "[i]nterest shall be at the rate of nine per centum per annum, except where otherwise provided by statute; provided the annual rate of interest to be paid in an action arising out of a consumer debt where a natural person is a defendant shall be two per centum per annum " (emphasis added; CPLR § 5004 [a]). Based on the FCJIA, if a judgment related to unpaid rent constitutes a consumer debt it shall receive the 2% interest rate.
Consumer debt is defined as " any obligation or alleged obligation of any natural person to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes, whether or not such obligation has been reduced to judgment, including, but not limited to, a consumer credit transaction, as defined in subdivision (f) of section one hundred five of this chapter" (CPLR § 5004 [b]). Moreover, "[t]he term 'consumer credit transaction' means a transaction wherein credit is extended to an individual and the money, property, or service which is the subject of the transaction is primarily for personal, family or household purposes" (CPLR § 105 [f]; see also New York City Civil Court Act § 2101 [g]).
A plain reading of the statute and definitions alone, as well as a prior decision by this Court, makes clear a consumer debt can include, but is not limited to, a consumer credit transaction (see Dionilda Bautista v Natividad Chun et al, CV-0627-17 [Yonkers City Court 2024] [Beltran, J.]). Therefore, a judgment for a consumer debt can receive a 2% interest rate without the debt also being deemed a consumer credit transaction. These definitions alone, however, do not provide guidance as to the types of debt which qualify under either definition. 
Consumer Credit Fairness Act ("CCFA")
More specific law applicable to this Court is the Consumer Credit Fairness Act [*2]("CCFA") which went into effect on May 7, 2022. The CCFA defines a consumer credit transaction as
"a revolving or open-end credit transaction wherein credit is extended by a financial institution, which is in the business of extending credit, to an individual primarily for personal, family or household purposes, the terms of which include periodic payment provisions, late charges and interest accrual. A consumer credit transaction does not include debt incurred in connection with, among others, medical services, student loans, auto loans or retail installment contracts"
(22 NYCRR § 210.14-a [a] [1] [Uniform Civil Rules for the City Courts Outside the City of New York; see also 22 NYCRR 202.27-a [a] [1] [Uniform Civil Rules for the Supreme Court and the County Court]). The CCFA defines consumer credit transaction, however, it does not define consumer debt. As such, this Court must turn to caselaw to interpret the foregoing provisions of law.
Consumer Credit Transaction
Plaintiff contends residential rent does not fit within the definition of a consumer credit transaction. Plaintiff argues a consumer credit transaction " was not intended and should not be extended to apply to an action arising from a lease of real property" because a landlord does not "extend credit" to a tenant (53rd & 7th Corp. v Rossi, 85 Misc 2d 916, 918 [Civ Ct, New York County 1975]). The court in 53rd & 7th Corp. based its holding on dictionary definitions of consumer credit finding it only relates to "credit extended for buying goods and services for ones personal use through installment plans, charge accounts, short-term loans, etc." (id. citing Webster's New World Dictionary of the American Language [2d ed, p 306]; see also State of New York v Monteleone, 138 AD2d 821, 822-823 [3d Dept 1988] [finding hospital operated by a New York State administrative agency was not involved in the business of providing credit to its citizens]).
Moreover, plaintiff relies heavily on Rhumb W 21 LLC v Wolfe, a civil action for unpaid rent and breach of a written lease agreement (2023 WL 3851935 at *2 [Sup Ct, New York County 2023]). In Rhumb W 21 LLC, defendant raised an affirmative defense that the matter was not a "consumer debt transaction governed by a three-year statute of limitations" (id.). The New York County Supreme Court found the matter "which concern[ed] unpaid rent, [was] not a consumer debt transaction matter" (id.). The court based its finding on the definition of consumer credit transaction (22 NYCRR 202.27-a [a] [1] ["a consumer credit transaction means a revolving or open-end credit transaction wherein credit is extended by a financial institution, which is in the business of extending credit, to an individual primarily for personal, family or household purposes, the terms of which include periodic payment provisions, late charges and interest accrual"] [Uniform Civil Rules for the Supreme Court and the County Court] (see also 22 NYCRR § 210.14-a [a][1] [Uniform Civil Rules for the City Courts Outside the City of New York [same definition]). The court also indicated " leases operate under the plethora of landlord tenant laws applicable in this state [and] [u]npaid rent does not function like an unpaid credit card [since] a landlord is not in the business of extending credit—a landlord offers housing in exchange for payments" (Rhumb W 21 LLC, 2023 WL 3851935 at *2).
This Court agrees with the holding in Rhumb W 21 LLC to the extent that rent does not fall within the definition of a consumer credit transaction. However, this Court does not interpret Rhumb W 21 LLC to also hold that rent does not fall within the more general definition of consumer debt since there, the court did not rely on CPLR § 5004. Additionally, Opera House [*3]Lofts LLC v Carnahan, which relies on Rhumb W 21 LLC, follows the same analysis finding rent is not a consumer credit transaction, but leaves open whether rent is a consumer debt (Opera House Lofts LLC v Carnahan, 2023 WL 8436028 at 6 [Sup Ct, Kings County 2023]).
Based on the foregoing caselaw and statutes, this Court agrees with plaintiff that a landlord does not "extend credit" when entering into lease agreements with a tenant. Therefore, since a landlord does not "extend credit" to a tenant, unpaid rent does not meet the statutory definition of a consumer credit transaction (CPLR § 105 [f]; 22 NYCRR § 210.14-a [a] [1] [Uniform Civil Rules for the City Courts Outside the City of New York; see also 22 NYCRR 202.27-a [a] [1] [Uniform Civil Rules for the Supreme Court and the County Court]).
Consumer Debt
The failure of residential rent to satisfy the definition of a consumer credit transaction does not preclude this Court from finding unpaid rent falls within the more general definition of consumer debt. Consumer debt can include " any obligation or alleged obligation of any natural person to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes " (CPLR § 5004 [b]). A plain reading of this statute seems sufficient to find rent is a consumer debt since a tenant is a "natural person" who has an "obligation" to pay rent and the "money [and] property" involved in obtaining a place to live is for "personal, family or household purposes" (CPLR § 5004 [b]).
Plaintiff disagrees with this interpretation of CPLR § 5004 [b] and relies on caselaw which this Court finds distinguishable from the instant matter. At the outset, Saxon Assocs. v Barton is not binding on this Court and was decided prior to the FCJIA amendment (Saxon Assocs. v Barton, 143 Misc 2d 602, 603 [City Ct, New York County 1989] [finding consumer debt does not meet the definition in 11 USC § 101 [7] since it does not cover a lease which conveys an interest in real property and for which the Bankruptcy Act specially provides in 11 USC § 365]).
Furthermore, the instant matter is not a foreclosure action whereby the Westchester County Supreme Court has found "a foreclosure action is not an 'action arising out of a consumer debt'" therefore "[t]he interest rate remains at nine per cent" (Community Loan Fund of New Jersey, Inc. v Riedel, 2022 WL 22954410 at *2 [Sup Ct, Westchester County 2022]). The court in Community Loan Fund of New Jersey justified its holding stating " foreclosures are not debt collection actions but are instead actions to enforce mortgage liens" and enforcing liens is distinguishable from actions seeking unpaid rent since an individual with a mortgage has a "security interest in [the] property, rather than [] collect[ing] money directly from a debtor [i.e. landlord]" (id. at 1; citing Citibank, N.A. v Yanling Wu, 199 AD3d 48, 52 [2d Dept 2021]).
Moreover, plaintiff relies on the court's statement in Community Loan Fund of New Jersey that "[a] review of the legislative history of [CPLR § 5004] shows that it refers only to debt collection actions, debt collectors, bank levies and wage garnishments. In none of the legislative history does it refer to foreclosure actions" (Community Loan Fund of New Jersey, Inc., 2022 WL 22954410 at *1). Although this statement is true with respect to foreclosures, defendant clarifies the legislative history of CPLR § 5004 does mention rent by stating New York consumers "[w]ith little or no income are already unable to pay their bills, including rent, medical bills, and car loans, or to continue paying consumer debt judgments" (defendant's mem of law ¶ 11 n 4; Sponsor Memo, S.5724A, 2021-2022 Sess Laws [2021]). Therefore, this Court declines to follow Community Loan Fund of New Jersey since it solely addresses foreclosure [*4]matters.
Turning to federal law, the definition of consumer debt under the Fair Debt Collection Practices Act ("FDCPA") tracks the definition of consumer debt under CPLR § 5004 [b]. The FDCPA defines consumer debt as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment (15 USC 1692a [5]); see also 11 USC § 101 [8] [bankruptcy proceedings]). Plaintiff concedes the federal definition of consumer debt mirrors the general definition of consumer debt under CPLR § 5004 [b] (plaintiff's mem of law ¶ 7).
Despite the same definition, plaintiff contends this Court should first determine whether a landlord is a creditor or debt collector subject to the FDCPA before determining whether the unpaid rent seeking to be collected is a consumer debt or consumer credit transaction (plaintiff's mem of law ¶ 7). Plaintiff contends "landlords are generally not considered to be debt collectors when seeking rental arrears" (plaintiff's mem of law ¶ 7; see Missionary Sisters of the Sacred Heart, Inc. v Dowling, 182 Misc 2d 1009 [Civ Ct, New York County 1999] [finding a landlord is not a creditor subject to the FDCPA; 15 USC § 1692]; but see Castillo v Balsamo Rosenblatt & Cohen, P.C., 33 Misc 3d 700, 707 [Civ Ct, Kings County 2011]) [finding a law firm is a debt collector subject to the FDCPA; 15 USC § 1692]; see also Opera House Lofts LLC v Carnahan, 2023 WL 8436028 at *6 [Sup Ct, Kings County 2023] citing Romea v Heiberger & Assocs., 163 F3d 111, 114-116 [2d Cir 1998] [finding a law firm was a debt collector, rent arrears were a debt, and the rent demand letter was a debt collection communication all subject to the FDCPA; also stating the FDCPA does not apply to any person or entity to whom a debt is owed such as an individual landlord, or to their officers or employees, who collect, or attempt to collect, debts in the person or entity's name]; Finlayson v Yager, 21 Misc 3d 1112 [A] [Poughkeepsie City Ct 2008] ["[t]he FDCPA notice provisions do not apply where the creditor [i.e. landlord], rather than a debt collector [i.e. law firm attempting to collect the unpaid rent], directly attempts to collect the debt]).
Based on the foregoing, plaintiff is correct that a demand for rent may be deemed a debt collection notice depending on who sends out the rent demand. However, plaintiff's reliance on the FDCPA on these grounds is misplaced. The FDCPA does not directly relate to the applicable interest rate for unpaid rent, therefore, this Court does not need to render a determination in the instant matter as to whether an individual landlord or a law firm is subject to the FDCPA. As such, this Court declines to assess matters for unpaid rent on this ground since violations of the FDCPA are not before this Court nor are dispositive of determining whether rent falls within the definition of consumer debt (CPLR § 5004 [b]).
This Court will however look to the FDCPA for the sole purpose of interpreting the definition of consumer debt. It is sufficiently clear the definition of consumer debt under CPLR § 5004 [b] mirrors the definition of consumer debt under federal law and has a more general definition then a consumer credit transaction. Therefore, regardless of who sends out a rent demand notice, unpaid rent falls within the more general definition of consumer debt. Moreover, the plain reading of CPLR § 5004 makes clear that a consumer debt includes but is not limited to a consumer credit transaction (CPLR § 5004 [a]; CPLR § 105 [f]). Therefore, categories of consumer debt include rent, medical bills, student loans, and utilities (see defendant's mem of law ¶¶ 6-7, 15; McCallister v Lawson, no. CV-044252-11/KI [Civ Ct, New York City 2023] [*5][residential arrears]; Romea, 163 F3d at 116 [back rent]; Savino v Computer Credit, Inc., 164 F3d 81, 85-86 [2d Cir 1998] [medical]); Easterling v Collecto, Inc., 692 F3d 229 [2d Cir 2012] [student loans]). It therefore follows that rent can be deemed a consumer debt without being further categorized as a consumer credit transaction. Plaintiff has not provided this Court with any further arguments to support a 9% interest rate (i.e. a lease provision) [see Opera House Lofts LLC, 2023 WL 8436028 at *6).
Conclusion
Based on the foregoing, this Court determines residential rent arrears/unpaid rent is deemed a consumer debt pursuant to CPLR § 5004. Any judgment entered in this matter, if awarded, is subject to a pre-judgment and post-judgment 2% interest rate (CPLR § 5004 [a]). This Court deems this Decision and Order binding on all matters for residential rent arrears/unpaid rent which are currently pending and/or future matters which will be filed in this Court.