Annette DICKMAN, an individual, Plaintiff,

v.

KIMBALL, TIREY & ST. JOHN, LLP, a California limited liability partnership, Defendant.

Case No. 13–cv–01999 JM (DHB).

United States District Court, S.D. California.

Nov. 6, 2013.

Daniel J. Lickel, Rooney & Lickel, San Diego, CA, for Plaintiff.

Erik S. Velie, Erik Velie, Los Angeles, CA, for Defendant.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

JEFFREY T. MILLER, District Judge.

On August 27, 2013, Plaintiff filed a complaint alleging Defendant violated the

Federal Fair Debt Collection Practices Act ("FDCPA"). Compl. (Dkt. No. 1). On September 12, 2013, Defendant filed a motion to dismiss for failure to state a claim. Dkt. No. 3. Plaintiff filed an opposition to Defendant's motion on October 21, 2013. Dkt. No. 6. Defendant did not file a reply brief. As neither party requested oral argument, the court took the motion to dismiss under submission on October 29, 2013. For the reasons set forth below, Defendant's motion to dismiss is denied.

## BACKGROUND

On June 15, 2012, Plaintiff entered into a residential lease agreement for property located in Escondido, California ("the Escondido Property"). Compl. ¶ 14. Plaintiff signed the lease on June 27, 2012, for a one-year term starting on July 1, 2012, and ending on June 30, 2013; however, Plaintiff alleges the lease contains a typographical error stating that it terminated on June 30, 2012. *Id.* Plaintiff entered into the lease agreement with ENL Investments, LLC and Ed Forrester. *Id.* ¶ 15. Ed Forrester is the owner of ENL Investments, LLC, and he was Plaintiff's point of contact regarding the lease agreement. *Id.* Plaintiff began residing at the Escondido Property on July 1, 2012. *Id.* ¶ 14.

The lease agreement required Plaintiff to make monthly rental payments of $1,900.00 by electronic deposit into ENL Investments, LLC's bank account. *Id.* ¶ 16. Plaintiff alleges that it was her regular practice to timely make these deposits at the beginning of each month. *Id.* Plaintiff's payments were processed online by her bank and cleared her account on the next business day. *Id.*

Unbeknownst to Plaintiff, a notice of default and notice of trustee's sale had been recorded against the property prior to the date that she signed the lease agreement and took possession of the property.

*Id.* On July 5, 2012, Mr. Forrester filed for bankruptcy relief under Chapter 7 of the bankruptcy code. *Id.* ¶ 18. As a result, a pending foreclosure sale on the Escondido Property was rescheduled for August 23, 2012. *Id.* Mr. Forrester filed papers with the bankruptcy court claiming to be an owner of the Escondido Property pursuant to an unrecorded quit claim deed prepared prior to the date that he filed for bankruptcy relief. *Id.* ¶ 19. Plaintiff alleges she was unaware of the scheduled foreclosure sale of the Escondido Property. *Id.* ¶ 18.

On August 23, 2012, U.S. Financial, LP ("U.S. Financial") bought the Escondido Property at the trustee's sale without Plaintiff's knowledge. *Id.* ¶ 20. A trustee's deed was delivered to the County recorder's office for recording on August 31, 2012. *Id.* As a result of the standard procedures used by the San Diego County Recorder's Office, the transfer deed did not become visible in the public record until two business days later on September 5, 2012. *Id.* Plaintiff received no notice of the recorded deed prior to its public filing. *Id.*

During the foreclosure process, Plaintiff initiated the electronic funds transfer on Saturday, September 1, 2012, to pay rent to ENL Investments, LLC for the month of September. *Id.* ¶ 23. As the payment was made on a three-day weekend, the payment did not clear Plaintiff's bank account until September 4, 2012. *Id.* Plaintiff alleges that she did not have actual or constructive notice of the transfer of the Escondido Property to U.S. Financial at the time she made the September rent payment. *Id.*

On about September 9, 2013, Don Rady, the owner of U.S. Financial, left a business card for Plaintiff at the Escondido Property. *Id.* ¶ 24. The back side of the business card had a handwritten note stating

that "we are the new owners of this house, please call us." *Id.* This card was the first actual notice Plaintiff received that ownership of the Escondido Property had changed hands. *Id.* On September 13, 2012, Defendant, acting as legal counsel for U.S. Financial, drafted, signed, and directed that a three-day Notice to Pay Rent or Quit ("Notice") be served on Plaintiff. *Id.* ¶ 25. Plaintiff received service of the Notice on September 13, 2012. *Id.*

The Notice demanded payment of $1,900.00 for September rent "WITHIN THREE DAYS" or legal proceedings would be instituted to recover possession of the subject premises, court costs, attorney's fees, and statutory damages up to $600.00. *Id.* ¶ 26. The Notice further informed Plaintiff that if she failed to pay the requested $1,900.00 within three days, the owner of the subject premises would elect to declare Plaintiff's rental agreement for the Escondido Property forfeit. *Id.* ¶ 27. This suggested to Plaintiff that her rental agreement was still in effect. *Id.*

At the same time that Defendant served the Notice on Plaintiff, Defendant also sent a letter to Plaintiff stating: "If we receive a judgment against you, the Sheriff will remove you from the premises. Our client could also garnish your wages, levy on your bank accounts, and/or attach your non-exempt personal property for judicial sale in order to collect all monies due." *Id.* ¶ 34. This letter further stated: "This debt will be assumed to be valid unless you notify us within 30 days of receipt of this letter that you dispute all or part of the debt. If you notify us in writing within this same 30–day period, we will send you verification of this debt. Upon written request within the thirty-day period, we will provide you with the name and ad-

dress of the original creditor, if different from the current creditor." *Id.* ¶ 35.

On about September 17, 2012, after expiration of the three-day Notice, U.S. Financial sent a letter acknowledging that Plaintiff had paid the rent to the prior owner, and claiming that Plaintiff "failed to acknowledge [U.S. Financial] as the owner of the Property, [Plaintiff] completely disregarded the tenant questionnaire and [Plaintiff] improperly paid rent to the prior owner of the Property." *Id.* ¶ 37. However, Plaintiff had received no notice regarding where to send rent to the new owner until she received the September 13, 2012 three-day Notice to pay or quit. *Id.*

Despite knowing that Plaintiff had already paid rent to the prior landlord, Plaintiff alleges that Defendant filed an unlawful detainer action against Plaintiff on October 3, 2012. *Id.* ¶ 38. The complaint claimed that Plaintiff owed rent in the amount of $1,900.00 for the month of September 2012 and referenced the three-day Notice to pay rent or quit that Defendant served on Plaintiff. *Id.* ¶ 39. On November 20, 2012, after a civil trial, the court dismissed Defendant's unlawful detainer action against Plaintiff because the required 60– and 90–day notice under California and Federal law had not been given and because the elements of an unlawful detainer had not been met. *Id.* ¶ 42.

Based upon these factual allegations, Plaintiff alleges Defendant violated the FDCPA. According to the complaint, Defendant's violations of the FDCPA include, but are not limited to the following:

a. *15 U.S.C. § 1692e(2)(A)* by making a false representation of the character, amount, or legal status of the alleged debt;

b. *15 U.S.C. § 1692e(5)* by threatening to take an action that cannot legally be taken or that is not intended to be taken;

c. *15 U.S.C. § 1692e(10)* by making use of a false representation or deceptive means to collect or attempt to collect a debt;

d. *15 U.S.C. § 1692f(1)* by attempting to collect an amount not permitted by law;

e. *15 U.S.C. § 1692f* generally by using an unfair or unconscionable means of collecting a debt in contravention of federal and state laws protecting tenants at foreclosure.

As a proximate result of the alleged FDCPA violations, Plaintiff seeks actual damages pursuant to 15 U.S.C. § 1692k(a)(1), statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A), and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3). For actual damages, Plaintiff claims emotional distress in the amount of at least $15,000.00.

### LEGAL STANDARD

■ For a plaintiff to overcome a Rule 12(b)(6) motion to dismiss for failure to state a claim, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Factual pleadings merely consistent with a defendant's liability are insufficient to survive a motion to dismiss because they only establish that the allegations are possible rather than plausible. *See id.* at 678–79, 129 S.Ct. 1937. The court should grant 12(b)(6) relief only if the complaint lacks either a "cognizable legal theory" or facts sufficient to support

a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1990).

In addition, Rule 9(b) requires that the complaint "state with particularity the circumstances constituting fraud." The Ninth Circuit has explained that "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir.2003) (quoting *Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir.1997)).

### DISCUSSION

The sole cause of action raised by Plaintiff's complaint is Defendant's alleged violation of the FDCPA. The FDCPA was passed to prevent abusive debt collection practices, including the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Under the FDCPA, debt collectors are prohibited from engaging in certain inappropriate communications with consumers, harassing or abusing consumers, or engaging in other unfair practices, such as collecting fees not specified in the agreement creating the debt. *See* 15 U.S.C. §§ 1692c, 1692d, and 1692f. The FDCPA defines debt collectors as those who collect or attempt to collect a debt owed to another entity, although the definition carves out several exceptions to the definition. *See* 15 U.S.C. § 1692a. However, the Supreme Court in *Heintz v. Jenkins* held that the FDCPA "applies to attorneys who regularly engage in consumer-debt-collection activity, even when that activity consists of litigation." *Heintz v. Jenkins,* 514 U.S. 291, 299, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995).

### I. California Litigation Privilege in California Civil Code Section 47(b)

First, Defendant argues that its actions are protected by the litigation privilege.

Specifically, Defendant argues the litigation privilege set forth in California Civil Code Section 47(b) protects any publication or broadcast made in any judicial proceeding. Defendant argues the alleged violations of the FDCPA in the complaint, i.e. filing and litigating a lawsuit as well as serving a three-day Notice and sending a letter regarding said litigation, are all actions properly protected from attack by the litigation privilege.

In response, Plaintiff contends the United States Supreme Court ruled in *Heintz v. Jenkins* that the FDCPA covered litigation activities. 514 U.S. 291, 295, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995). As a result, Plaintiff argues it has been nationally recognized since 1995 that the litigation privilege does not apply to claims under the FDCPA. Indeed, the California district court in *Oei v. North Star Capital Acquisitions, LLC* indicated that "[i]t is well settled that the Supremacy Clause of the United States Constitution grants Congress the power to preempt state and local laws ... As a result, it is equally well settled that California's litigation privilege does not apply to federal causes of action, including FDCPA claims." *Oei v. North Star Capital Acquisitions, LLC,* 486 F.Supp.2d 1089, 1098 (C.D.Cal.2006)(citing *Irwin v. Mascott,* 112 F.Supp.2d 937, 962–63 (N.D.Cal.2000)(holding that the litigation privilege is inapplicable to claims under the FDCPA); *Martinez v. California,* 444 U.S. 277, 284, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980) ("It is clear that the California immunity statute does not control this claim [under § 1983] even though the federal cause of action is being asserted in the state courts"); *Pardi v. Kaiser Found. Hosp.,* 389 F.3d 840, 851 (9th Cir. 2004) (holding that defendant was not entitled to assert the litigation privilege as a shield against liability under the ADA); *Kimes v. Stone,* 84 F.3d 1121, 1127 (9th Cir.1996) (holding that the California litigation privilege did not bar plaintiff's § 1983 claim due to the Supremacy Clause); *Contreras v. Corinthian Vigor Ins. Brokerage, Inc.,* 25 F.Supp.2d 1053, 1056 (N.D.Cal.1998) (holding that any immunity under Civil Code § 47(b) is preempted by the Fair Labor Standards Act "by virtue of the Supremacy Clause")).

■ Having reviewed the cases relied upon by the parties, the court finds the California litigation privilege does not bar Plaintiff's FDCPA claim. *See Holmes v. Electronic Document Processing, Inc.,* 966 F.Supp.2d 925, 937 n. 5, 2013 WL 4456544, at *9 n. 5 (N.D.Cal. Aug. 15, 2013)(noting it is well established that the California litigation privilege does not apply to FDCPA claims); *see also Heintz,* 514 U.S. at 298, 115 S.Ct. 1489 (concluding the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation"). Notably, Defendants have not cited any legal authority for the proposition that the litigation activities alleged by Plaintiff are privileged from liability under the FDCPA. Accordingly, Defendant's motion to dismiss Plaintiff's FDCPA claim on the basis of the California litigation privilege is denied.

## II. Anti–SLAPP Provisions

■ In the context of their litigation privilege argument, Defendants also allege that its conduct is protected by California Code of Civil Procedure Section 425.16 ("Anti–SLAPP Law"). The Anti–SLAPP Law provides:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California constitution in connection with a public issue shall be subject to a special motion to strike unless the court

determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Under this provision, parties "sued in federal courts can bring anti-SLAPP motions to strike state law claims and are entitled to attorneys' fees and costs when they prevail." *Verizon Del., Inc. v. Covad Communications Co.*, 377 F.3d 1081, 1091 (9th Cir.2004). However, Plaintiff argues that California's anti-SLAPP Law does not apply to federal claims, and Plaintiff has only alleged a single, federal claim for relief under the FDCPA. *See Hilton v. Hallmark Cards*, 580 F.3d 874, 881 (9th Cir.2009)(noting "a federal court can only entertain anti-SLAPP special motions to strike in connection with state law claims"), *amended and superseded on denial of rehearing by* 599 F.3d 894, 901 (9th Cir.2010) (reiterating "the anti-SLAPP statute does not apply to federal law causes of action").

■ As correctly noted by Plaintiff, the Ninth Circuit has clearly determined that California's Anti–SLAPP Law does not apply to federal causes of action. *Hilton*, 599 F.3d at 901; *see also In re Bah*, 321 B.R. 41, 46 (9th Cir.BAP2005)(noting with approval the district court's holding that anti-SLAPP statute was not applicable to federal questions in *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 63 F.Supp.2d 1127, 1129–30 (N.D.Cal.1999)). Once again, Defendant has not provided any legal basis for reaching the contrary conclusion. Accordingly, Defendant's Anti–SLAPP argument is unavailing, and the motion to dismiss Plaintiff's FDCPA claim based on California's Anti–SLAPP Law is denied.

## C. Underlying Litigation as a Debt Collection

■ Defendant argues the unlawful detainer action was not a debt collection under the FDCPA. As alleged in the complaint, Defendant served Plaintiff with a three-day Notice to pay rent or quit the Escondido Property and subsequently filed an unlawful detainer action. Defendant contends both of these actions primarily seek possession of the property rather than debt collection. Defendant contends a debt collector's actions to evidence a debt rather than collect a debt are not actionable, i.e. a trustee's deed upon sale evidences a sale, rather than collection of a debt, and therefore is not subject to the FDCPA.[1] For these reasons, Defendant contends it is not liable for the conduct alleged within the complaint, and the motion to dismiss should be granted accordingly.

Plaintiff contends Defendant's actions constitute debt collection as defined by the FDCPA. The FDCPA applies to debt collection of consumer debts with "debt" broadly defined as follows:

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family or household purposes, whether or not such obligation has been reduced to judgment.

---

1. As support for this proposition Defendant cites *Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098, 1099 (9th Cir.1996). In *Wade*, the Ninth Circuit determined that a debt collector's innocuous debt collection attempts did not violate the FDCPA, despite being in violation of state law requiring debt collectors to obtain state debt collection licenses. *Id.* After reviewing this case, the court is unclear how this case pertains to Defendant's argument as it does not relate to a trustee's deed of sale or the distinction between debt collection and attempts to evidence a sale.

15 U.S.C. § 1692a(5). As support for her argument, Plaintiff relies upon decisions from other courts that have found that rent owed pursuant to a lease is an obligation within the scope of the FDCPA's definition of "debt." *See Romea v. Heiberger & Assoc.*, 163 F.3d 111, 114–15 (2nd Cir.1998); *Leasure v. Willmark Communities, Inc.*, 2011 WL 2267598, at *2 (S.D.Cal. June 7, 2011) (finding persuasive the Second Circuit's holding in *Romea* that, in light of the language of the FDCPA, there was no reason why residential rent incurred by a consumer should not constitute a debt); *Hodges v. Sasil Corp.*, 189 N.J. 210, 223–224, 915 A.2d 1 (N.J.2007) (adopting reasoning consistent with *Romea* and listing other cases reaching similar conclusions). Here, Plaintiff alleges Defendant's actions were designed to coerce Plaintiff into paying rent for September, which she had already paid to the prior landlord and did not owe to the new owner, and threatened Plaintiff with removal from her home in doing so. Plaintiff contends these actions constitute debt collection, and they are therefore covered by the FDCPA.

While the Ninth Circuit has yet to address this issue, the Second Circuit's analysis in *Romea* is applicable here. *See* 163 F.3d at 114–15. Specifically, the court finds the following reasoning persuasive:

> Under the FDCPA, "debt" is an "obligation ... to pay money arising out of a transaction" that involves "personal, family, or household purposes." 15 U.S.C. § 1692a(5). Back rent by its nature is an obligation that arises only from the tenant's failure to pay the amounts due under the contractual lease transaction. In this respect, back rent is much like the obligation arising out of a dishonored check where a service has been rendered or goods sold on the premise of immediate payment. The obligation to pay the bounced check, like

the duty to pay back rent, does not derive from an extension of credit but rather because the payor breached its payment obligations in the contract between the parties. Virtually all circuits that have addressed the issue of dishonored checks have held such checks to fall under the plain language of the FDCPA's definition of "debt." For the same reasons that those courts deemed dishonored checks to be debts under the FDCPA, we conclude that back rent is a debt.

*Id.* at 115; *see also Leasure*, 2011 WL 2267598, at *2. Having found back rent constitutes a debt under the FDCPA, the Second Circuit then concluded that delivery of a three-day rent demand notice, as required by New York law as condition precedent to summary eviction proceeding, was a "communication" to collect a debt, within the meaning of the FDCPA, and the attorneys were acting as "debt collectors" for FDCPA purposes. *Id.* at 116–18.

Once again, Defendant has not provided the court with any authority suggesting that its alleged conduct does not constitute debt collection under the FDCPA. Under the circumstances, the court finds the analysis in *Romea* provides a reasonable basis for finding Plaintiff has sufficiently alleged Defendant engaged in debt collection under the FDCPA. Accordingly, Defendant's motion to dismiss Plaintiff's FDCPA claim for failing to allege debt collection activities covered by the statute is denied.

### C. Failure to Allege Sufficient Facts Under a Cognizable Legal Theory

Defendant also contends Plaintiff has failed to state sufficient facts to allege a cognizable legal theory. Defendant broadly argues that all of Plaintiff's claims made under the complaint are either conclusory allegations, legal characterizations, unrea-

sonable inferences or unwarranted deductions of fact. Defendant argues the complaint provides no detail regarding how and in what manner Defendant violated fair debt collection practices. Based on Plaintiff's "scant factual allegations" and "conclusory statements of unlawful and fraudulent practices," Defendant contends it is unable to prepare an answer to sufficiently address Plaintiff's claims. Accordingly, Defendant asks the court to dismiss Plaintiff's complaint under Rule 12(b)(6). MTD at 6 (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir.1984); *In re VeriFone Sec. Litig.*, 11 F.3d 865, 868 (9th Cir.1993)). In response, Plaintiff objects to Defendant's characterization of the contents of the complaint and asserts the complaint specifically describes Defendant's actions and explains how they violated the various provisions of the FDCPA.

Having reviewed the complaint and Plaintiff's opposition to Defendant's motion to dismiss, the court finds Plaintiff has satisfied her burden to provide enough facts to state a claim to relief that is plausible on its face. Plaintiff's complaint certainly contains sufficient factual allegations and legal arguments for Defendant to prepare an appropriate answer to Plaintiff's claim. The allegations detailed above in the factual background section of this order are taken entirely from Plaintiff's complaint. In addition to these factual allegations, the complaint correlates Defendant's actions to the specific statutory provisions of the FDCPA that Plaintiff alleges Defendant violated. On the whole, the complaint provides more than scant factual allegations and conclusory statements of Defendant's unlawful and fraudulent conduct. Accordingly, the court is not persuaded by Defendant's generalized objections to the sufficiency of the complaint, and Defendant's motion to dismiss for failure to sufficiently allege a FDCPA claim is denied.

## D. Failure to Meet the Heightened Pleading Requirements for Fraud

Defendant next contends the complaint fails to meet Rule 9(b) and its heightened pleading requirement for fraud. Although Plaintiff has not alleged a fraud claim or a claim where fraud is an essential element, the FDCPA claim is in part based on the theory that Defendant made use of false representations and deceptive means to collect a debt. *See* Compl. ¶ 45.c. In a case such as this, "where fraud is not an essential element of a claim, only allegations ('averments') of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b). Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1104–05 (9th Cir.2003). To the extent Plaintiff alleges fraudulent conduct, the allegations must "be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir.2009) (internal quotation marks, ellipsis and citations omitted). The allegations must include "the who, what, when, where, and how of the misconduct charged" and "must set forth more than the neutral facts necessary to identify the transaction." *Id.* (internal quotation marks and citations omitted, emphasis in original).

In the complaint, Plaintiff alleges Defendant "made a false representation of the character, amount, or legal status of an alleged debt by claiming that $1,900.00 was owed for the month of September when it was not owed" and "made use of a deceptive means to attempt to collect a debt by

serving a three day notice when in fact 90 or 60 days notice was required." Based on the allegedly false representations and deceptive means used by Defendant to collect Plaintiff's September rent payment, Plaintiff alleges Defendant violated 15 U.S.C. § 1692e(10). Taken along with Plaintiff's other factual allegations, the court finds Plaintiff has alleged fraudulent conduct with sufficient specificity to meet the requirements of Rule 9(b).

### CONCLUSION

Based on the foregoing, Defendant's motion to dismiss is denied. Defendant is ordered to file its answer within 20 days of the filing of this order.

IT IS SO ORDERED.